**Marilyn OATTS, Appellant (Plaintiff),**

v.

**Vicki JORGENSON and Estate of J. Philip Oatts, Appellees (Defendants).**

No. 91–29.

Supreme Court of Wyoming.

Nov. 27, 1991.

H.W. Rasmussen and Bruce P. Badley, Badley & Rasmussen, P.C., Sheridan, for appellant.

Robert W. Connor, Jr. and Debra J. Wendtland, Sheridan, for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

THOMAS, Justice.

The only issue presented in this case is the effect of registering a book-entry treasury bill in the names of "Phil Oatts or Marilyn J. Oatts or Vicki Jorgenson." The treasury bill in question was purchased through a banking institution and was represented by an entry on the records of a Reserve Bank.[1] After the death of J. Philip Oatts (Phil Oatts), his widow, Marilyn J. Oatts (Oatts), claimed sole ownership of the treasury bill, but the trial court, applying the law of Wyoming, held that a tenancy in common was created by the form of the book entry. This ruling was contrary to Oatts' argument that the language resulted in a joint tenancy with right of survivorship because of the provisions of the sections of the Code of Federal Regulations that relate to treasury securities. It is our conclusion that the trial court was correct in invoking the state law, which in this instance is consistent, not contrary, to applicable federal regulations, and we affirm the judgment of the trial court.

Oatts frames the issues in her brief in this way:

"I. The District Court erred by failing to apply the controlling federal regulations to determine ownership of the proceeds from a United States Treasury book-entry procedure.

"II. The trial court erred in giving Vicki Jorgenson and the Estate of Philip Oatts part of the federal security."

Vicki Lynn Jorgenson (Jorgenson) and the Estate of J. Philip Oatts (Oatts Estate) relate the issues in this fashion:

"A. Whether appellant's arguments that federal regulations control the outcome of this case are properly before the court?

"B. Alternatively, if the court chooses to address appellant's arguments based on federal regulations, whether those arguments are supported by cogent argument and cited authority?

"C. Whether appellee is entitled to summary judgment under Wyoming law concerning the creation and existence of a joint tenancy?"

Phil Oatts and Marilyn J. Townsend were married on June 6, 1986. At the time of the marriage, Phil Oatts had two adult daughters, Vicki Lynn Jorgenson (Jorgenson) and Janice K. Kane. Phil Oatts was possessed of a substantial estate, including all of the issued and outstanding shares in Big Horn Beverage Co., Inc. of Sheridan.

On January 9, 1989, Phil Oatts received a distribution of approximately $153,000 from Big Horn Beverage Co., Inc., which he first deposited into a checking account jointly held with his wife at the First Interstate Bank of Sugarloaf, Sheridan. Subsequently, on January 26, 1989, Phil Oatts purchased a twenty-six week, $100,000 United States book-entry treasury bill from the First Interstate Bank of Commerce, Sheridan (Sheridan bank), with a check drawn upon the joint account. The Sheridan bank obtained the treasury bill through its affiliate, the First Interstate

---

1. A book-entry treasury bill is defined in 31 C.F.R. § 350.1(b) as:
   " * * * [A]ny Treasury bill issued on or after the dates specified in § 350.0(a) in the form of an entry on the records of a Reserve Bank or the records of the Department of the Treasury."

Bank of Billings. In the form that the transaction took, a treasury bill was not actually issued. Instead, the transaction was recorded on the books of the banks, and a receipt was issued in the name of "PHIL OATTS OR MARILYN J. OATTS OR VICKI JORGENSON." Phil Oatts died prior to the maturity of the treasury bill, and Jorgenson and Janice K. Kane were named as the co-executrixes of his estate. About two weeks later, on June 6, 1989, Jorgenson redeemed the treasury bill from the Sheridan bank, receiving a cashier's check for its value which was made payable to "Phil Oatts or Marilyn J. Oatts or Vicki Jorgenson." Jorgenson subsequently negotiated the cashier's check.

On January 4, 1990, Oatts filed a conversion action against Jorgenson, in which Oatts claimed that she was the sole owner of the treasury bill proceeds by virtue of the right of survivorship. Jorgenson answered, counterclaimed for interpleader, and moved to have the Oatts Estate joined as a party. By an order dated June 25, 1990, the Oatts Estate was joined as a defendant, and the proceeds from the treasury bill were required to be deposited with the clerk of court pending resolution of the case.

The Oatts Estate and Jorgenson, respectively, filed motions for summary judgment on August 3, 1990. Oatts responded with a "Resistance to Summary Judgment," but she made no motion of her own for summary judgment. On November 21, 1990, the trial court held a telephone hearing in which it granted summary judgment for the Oatts Estate and Jorgenson.[2] By an order entered December 17, 1990, the trial court confirmed the finding announced during the telephonic hearing that there was no genuine issue of material fact, and it listed two legal issues as dispositive of the case. The trial court first considered whether the treasury bill created either a joint tenancy with right of survivorship or a tenancy by the entirety between Phil Oatts and the plaintiff, Oatts. Next the trial court considered whether Phil Oatts had made a valid gift of a one-third interest in the treasury bill to Oatts and Jorgenson, respectively.

The trial judge applied Wyoming law and ruled that neither a joint tenancy nor a tenancy by the entirety had been established between Philip and Marilyn Oatts. The court next ruled that Phil Oatts had made a valid gift of a one-third interest in the treasury bill to Oatts and to Jorgenson, respectively. The court, therefore, ordered that Oatts, Jorgenson and the Oatts Estate held the proceeds from the treasury bill as tenants in common, and it ordered distribution accordingly.

On December 26, 1990, Oatts filed her notice of appeal. She challenges the adverse summary judgment, essentially contending that she did enjoy a tenancy by the entirety or a joint tenancy with Phil Oatts that would entitle her to the full proceeds from the sale of the treasury bill.

In reviewing the propriety of the summary judgment, we apply the standard recently reiterated in *First State Bank v. American National Bank*, 808 P.2d 804, 806 (Wyo.1991), and *TZ Land and Cattle Co. v. Condict*, 795 P.2d 1204, 1208 (Wyo 1990) (quoting *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987)):

> "'A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no gen-

---

**2.** Marilyn Oatts alleges in her brief that, during the conference call on November 21, 1990, she informed the trial judge that research had been requested from a national research firm with respect to the applicability of federal regulations to the issue in the case, and that the trial judge requested the research and advised the parties that an order would not be filed until the authority had been reviewed. Vicki Lynn Jorgenson and the Estate of Phil Oatts deny that these events occurred. The record does not reflect the communications alleged in the Brief of Mar-

ilyn Oatts, but it does reflect that the product of the research was sent to the trial judge, in letter form, on or about December 5, 1990. On December 7, 1990, the Estate of Phil Oatts and Vicki Lynn Jorgenson filed a motion to strike that letter. On December 17, 1990, the trial court entered an order granting summary judgment in favor of the Estate of Phil Oatts and Vicki Lynn Jorgenson based solely upon the state law claims presented in the pleadings, motions, and memoranda.

uine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. *England v. Simmons*, Wyo., 728 P.2d 1137, 1140–1141 (1986). We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. Id. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden. *Jones Land & Livestock Co. v. Federal Land Bank of Omaha*, Wyo. 733 P.2d 258, 263 (1987). " 'Evidence opposing a summary judgment that is conclusory or speculative is insufficient to demonstrate that a material fact exists, and the trial court has no duty to anticipate possible proof. *Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73 (Wyo.1989).' "

In this case, Oatts argues that the trial court erred as a matter of law because it failed to apply regulations relating to federal securities which she contends control the issues of ownership and preempt state law. As a further position, she argues that there exist genuine issues of material fact with respect to the donative intent of Phil Oatts when he purchased the treasury bill. We will address first the argument relating to the federal regulations, in part because Jorgenson and the Oatts Estate argue that this issue is not properly before the court and that it should not be considered.

■ There are few rules more firmly settled in Wyoming jurisprudence than the rule that this court does not consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court. An exception exists for jurisdictional issues and other issues, which are of such fundamental nature that the court must take cognizance of them. *See, e.g., Epple v. Clark*, 804 P.2d 678 (Wyo.1991); *Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.*, 750 P.2d 1324 (Wyo.1988); *White v. Fisher*, 689 P.2d 102 (Wyo.1984); *ABC Builders, Inc. v. Phillips*, 632 P.2d 925 (Wyo.1981); *Schaefer v. Lampert Lumber Company*, 591 P.2d 1225 (Wyo. 1979). Our evaluation of the record causes us to agree with the position of the Oatts Estate and Jorgenson that the issue may not have properly been preserved.

■ The record demonstrates that Oatts chose to litigate only state common law issues before the trial court. The pleadings and motions presented there did not advance any legal theory or argument based upon federal regulations. Furthermore, Oatts did not make any effort to amend the pleadings to conform to a claim of federal preemption. The only reference found in the record to the federal regulations is that made by Oatts after the summary judgment hearing, but prior to the entry of the order. At that time, Oatts sent to the trial judge portions of a photocopied letter she had received from a national research firm relating to the application of federal regulations to the issues in this case. Oatts argues in her reply brief that this effort sufficiently raised the issue prior to *entry* of summary judgment as that is defined by W.R.C.P. 58(b).[3] She contends that this justifies her charge of error in the disposition by the trial court. We are not disposed to agree. The justification for the rule foreclosing appellate consideration is that it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court.

■ In most cases, the consideration of the issue would be concluded at this juncture but, in this instance, jurisprudential responsibility makes it appropriate to ad-

---

3. W.R.C.P. 58(b) provides, in pertinent part:
"*Time of Entry.*—A judgment or final order in any case shall be deemed to be entered whenever a form of such judgment or final order, signed by the trial judge, is filed in the office of the clerk of the court in which the case is pending."

dress the federal preemption claim. Any claim that state law is preempted by federal law is of fundamental importance and may well come within the exception to the general rule that we have outlined above. Furthermore, the dearth of authority in this area suggests that resolution of the issue would be helpful to practitioners and, perhaps, other courts.

■ Oatts and Jorgenson and the Oatts Estate agree that the property in question is a twenty-six week book entry treasury bill. The parties also are in accord that 31 C.F.R. § 350 (1990) entitled "Regulations Governing Book–Entry Treasury Bills" should control so far as federal law is pertinent.[4] Oatts on one hand and Jorgenson and the Oatts Estate on the other hand disagree with respect to the specific regulations under Part 350 that govern and also how those regulations should be interpreted. Oatts cites, in her brief, 31 C.F.R. §§ 350.7(b) and 350.15 [5] in support of her contentions that: (1) book-entry treasury bills may be recorded in the names of no more than two individuals; (2) any attempt that is made to record the treasury bill in more than two names results, under the federal regulations, in a conclusive presumption that recordation in the names of the first two listed is intended; and (3) therefore, Jorgenson has no right, title or interest in the proceeds of the treasury bill.

Jorgenson and the Oatts Estate argue on the other hand that Oatts' assertions are incorrect because the regulations cited by

Oatts have no application to the treasury bill at issue. This position is correct. Part 350 of Title 31 encompasses four subparts: Subpart A—Applicability and Effect—Definitions (§§ 350.0–.1); Subpart B—Book–Entry Treasury Bills—Federal Reserve Banks (§§ 350.2–.6); Subpart C—Book–Entry Treasury Bills—Department of the Treasury (§§ 350.7–.16); and Subpart D—Definitive Treasury Bills (§§ 350.17–.18). Sections 350.7(b) and 350.15, cited and relied upon by Oatts, come under Subpart C and, therefore, relate to book-entry treasury bills purchased directly from the Department of the Treasury. The record is clear that the treasury bill in this instance was purchased from a member bank of the Federal Reserve System, First Interstate Bank of Commerce, for its customer, Phil Oatts, from a Federal Reserve Branch Bank. The transaction clearly is controlled by the regulations in Subpart B of Part 350, 31 C.F.R.

The difference is significant because unlike Subpart C, which, for purposes of uniformity contains strict interpretive rules preempting state law, Subpart B contains no such strict rules for recordation or interpretation of a treasury bill account. Instead, 31 C.F.R. § 350.6(a)(2) provides:

*"Identification of accounts.* **Book-entry accounts may be established in such form or forms as customarily permitted by the entity (***e.g.*, **member bank, or other banking or thrift institution, or a securities dealer) maintaining them.**

"For the purposes of this subpart and notwithstanding any State law or any regulation or any notice to the contrary, it shall be conclusively presumed:

"(a) That any depositor in whose name, or name and title, book-entry Treasury bills are recorded, is a competent adult, (b) that recordation in two names, as prescribed in § 350.7(b) of this subpart, is intended, if there is an attempt to create some other form of recordation in two names, (c) that recordation in the names of the first two is intended, if there is an attempt to name more than two individuals, and (d) that the first name is the depositor in any case (not authorized and not otherwise provided for in this subpart) wherein an attempt is made to have book-entry Treasury bills recorded in two or more names, *e.g.*, two officers of an organization or two partners."

---

**4.** 31 C.F.R. § 350 states, in pertinent part:
"(a) *Applicability.* The regulations in this part govern the issuance of, and transactions in, the following Treasury bills:

\* \* \* \* \* \*

"(2) 26-week Treasury bills issued after June 1, 1977; \* \* \*."

**5.** 31 C.F.R. § 350.7(b) provides:
"(b) *Recordation*—(1) *Individuals.* Accounts for book-entry Treasury bills may be held in the names of individuals in one of two forms: single name, i.e., 'John A. Doe (123–45–6789) (address)'; or two names, i.e., 'John A. Doe (123–45–6789) (address) or (Mrs.) Mary B. Doe (987–65–4321).' No other form of recordation in two names, whether individuals or others, will be permitted, except in the case of co-fiduciaries."
31 C.F.R. § 350.15 provides:

The recommended identification for each such account would include data to permit both customer identification by name, address and taxpayer identifying number, as well as a determination of the Treasury bills being held in such account by amount, maturity date and CUSIP number, and of transactions relating thereto [emphasis added]."

It is evident from this provision of the federal regulations that member banks within the Federal Reserve System are permitted to maintain treasury bill accounts for their customers in the same manner that they maintain other accounts. Like the bank's regular accounts, the nature and effect of book-entry treasury bill accounts then are to be controlled by the law of the state where the account is located. *See Union National Bank of Texas v. Ornelas–Gutierrez*, 772 F.Supp. 962 (D.Tex. 1991) (applying state law to determine the legal effect of a book-entry treasury bill account).[6]

■ Oatts presents an alternative argument to the effect that "should this Court determine that the specific regulations regarding United States securities are not controlling [*i.e.*, 31 C.F.R. Part 350], a reversal * * * is still required * * * under * * * 31 C.F.R. § 306.11(a)(2)(i)."[7] This alternative argument is inapt because the specific regulations set forth in 31 C.F.R. § 350 are dispositive with respect to the federal preemption issue. Consequently, the regulations found in 31 C.F.R. § 306.0, relating to United States securities, would be applied only to the extent that they are not displaced by more specific regulations.

31 C.F.R. § 306.0 (1990); 31 C.F.R. § 350.0 (1990); *see also Estate of Layne v. Williams*, 727 S.W.2d 157 (Mo.App.1987) (case refutes a similar argument brought under Section 306.11(a)(2)(i)).

In summary, the applicable federal regulations in this instance refer the issue to the law of the state when the question is what is the nature and legal effect to be given to a book-entry treasury bill account maintained by a member bank of the Federal Reserve Bank System. The trial court committed no error of law in not invoking the federal regulations to determine the ownership issues presented below. Not only was that theory absent in the presentation of the case to the trial court but, if it had been urged, it would have led to the conclusion reached by the trial court.

We then turn to applicable Wyoming law. In this context, Oatts also argues for reversal of the summary judgment contending that genuine issues of material fact are present with respect to Phil Oatts' actual intent when he purchased this treasury bill in the name of "Phil Oatts or Marilyn J. Oatts or Vicki Jorgenson." Oatts argues that Phil Oatts intended to create a joint tenancy with right of survivorship only with her, and she seeks at trial to present extrinsic evidence relating to this issue. We are satisfied that the trial court correctly applied the law of Wyoming in reaching its determination that the operative language created, as a matter of law, a tenancy in common among Oatts, Phil Oatts and Jorgenson and that tenancy in common continued to exist among Oatts, Jorgenson, and the Oatts estate upon Philip's death.

---

**6.** *Union National Bank of Texas v. Ornelas–Gutierrez*, 772 F.Supp. 962 (D.Tex.1991), is remarkably similar to this case. A had bought book-entry treasury bills and designated two payable-on-death beneficiaries, B and C. A died. Union National Bank then interplead A's estate, B, and C. A's estate claimed that the designations for beneficiaries to whom the account would be payable on death were inadequate as a matter of state law and claimed sole ownership of the treasury bills. The estate argued in the alternative that 31 C.F.R. § 350.7(b)(1) applied to invalidate the payable-on-death beneficiary status of C. The federal district court applied the analysis we have set forth in this opinion and held that § 350.7(b)(1) was not applicable to book-

entry treasury bills purchased through the Federal Reserve Bank System. It then applied state law in resolving the ownership issues.

**7.** 31 C.F.R. § 306.11(a)(2)(i) deals with the registration of United States securities with the Department of the Treasury. Section 306.-11(a)(2)(i) provides that when multiple individuals are registered on the security connected by the disjunctive "or" they hold the security as joint tenants with right of survivorship. This analysis leads Oatts to conclude that she is a joint tenant with Jorgenson, and each of them is entitled to one-half of the proceeds of the treasury bill.

The minimum requirements for establishing a joint tenancy or a tenancy by the entirety were clearly articulated in *Wambeke v. Hopkin*, 372 P.2d 470, 475–76 (Wyo. 1962), in this way:

"1. Each of the four unities of interest, time, title, and possession must be present, with the added unity of person for a tenancy by the entirety; or

"2. In the absence of one or more of the first four unities, it must be evident from the language of the instrument itself that the parties thereto intended to create a right of survivorship."

While the case involved real property rather than personal property, this court relied upon the *Wambeke* case in *Choman v. Epperley*, 592 P.2d 714 (Wyo.1979). There, the court had to decide whether a quitclaim deed to " * * * MARY CHOMAN for her natural life, remainder to MIKE CHOMAN of Sheridan, Wyoming, and JOE CHOMAN of Hurst, Texas, their heirs and assigns forever" created a joint tenancy in the remaindermen. The court held that the simple presence of the four unities of interest, time, title, and possession did not, in and of itself, result in a joint tenancy in the absence of a manifest intention to do so. With respect to the question of whether a presumption at common law that favors joint tenancies was present in the law of Wyoming, the court said:

"Although Wyoming has not, by statute, directly reversed the one time common law presumption favoring joint tenancies, * * * the * * * cases reflect that the common law has been 'modified by judicial decisions' to accomplish such reversal."

\*   \*   \*   \*   \*   \*

" * * * If the one time common law presumption prevailed in Wyoming, the joint tenancy would have resulted without evidence thereof in the language of the instrument. The corollary is that, without the express provision for a joint tenancy, a tenancy in common is presumed."
*Choman*, 592 P.2d at 717–18.

In *Fehling v. Cantonwine*, 522 F.2d 604 (10th Cir.1975), the court applied Wyoming law to affirm a ruling of the United States District Court that a tenancy in common was created in a situation in which there was nothing in a promissory note executed in favor of husband and wife to indicate an intent to create a joint tenancy. This theory was followed in *In re Anselmi*, 52 B.R. 479 (Bankr.D.Wyo.1985), in which Wyoming law was applied in reaching a determination that a joint tenancy will not be presumed in the absence of an express intent to create a right of survivorship. To the same effect was *Rupe v. First National Bank at Douglas*, 485 P.2d 384 (Wyo. 1971), in which a lower court determination that title to a vehicle held by A "and/or" B was not sufficient to create a joint tenancy. An example of the appropriate way to create a joint tenancy in a bank account can be found in *National Bank of Newcastle v. Wartell*, 580 P.2d 1142 (Wyo.1978).

■ These cases demonstrate that the law in Wyoming, with respect to the creation of a joint tenancy with the right of survivorship in personal property, is clear. Joint tenancies are not favored in Wyoming, and such an interest will not be presumed in the absence of a clear manifestation, on the face of the instrument, of the intention to create a right of survivorship in the account.

■ In this case, neither Oatts nor Jorgenson and the Oatts Estate dispute the fact that Phil Oatts purchased the treasury bill in the name of "Phil Oatts or Marilyn J. Oatts or Vicki Jorgenson." Oatts raised no issue below with respect to the legal validity of that transaction. Neither did Oatts establish any genuine issue of material fact as to whether the operative language could possibly create a joint tenancy under Wyoming law. It is clear to us that, as a matter of law, it could not. Consequently, we find no genuine issue of material fact was presented to the trial court.

The trial judge correctly applied Wyoming law in ruling that those words in the designation of the account "Phil Oatts or

Marilyn J. Oatts or Vicki Jorgenson" failed to manifest clearly an intention to create a joint tenancy with a right of survivorship. The result is a tenancy in common. The judgment of the trial court to the effect that Oatts, Jorgenson and the Oatts Estate hold title as tenants in common is affirmed.