FOX, Justice.
[¶1] Charles and Wendy Fleig executed a signature card to add Mrs. Fleig to Mr. Fleig's checking account at Sunlight Federal Credit Union (the Credit Union). The signature *640 card failed to indicate whether the account would be subject to rights of survivorship; however, the Membership and Account Agreement provided that joint accounts had rights of survivorship unless otherwise indicated on the signature card. After Mr. Fleig's death, his estate sued Mrs. Fleig and the Credit Union, seeking, among other things, a declaratory judgment as to the rights in the checking account. The district court granted summary judgment in favor of the estate and we reverse.
ISSUE
[¶2] The issue is whether the district court properly concluded that Mr. and Mrs. Fleig owned their checking account as tenants in common with no rights of survivorship and therefore properly granted summary judgment in favor of Mr. Fleig's estate.
FACTS
[¶3] The following facts are undisputed. Mr. and Mrs. Fleig were married on June 4, 1992. During most of their marriage, Mr. and Mrs. Fleig kept their property and bank accounts separate and each paid a portion of household bills out of their respective accounts. On April 17, 2015, Mr. Fleig drove Mrs. Fleig to the Credit Union and they met with Tammy Walker, a teller at the Credit Union. Mr. Fleig told Ms. Walker that he wanted to add Mrs. Fleig to his checking account. Mr. and Mrs. Fleig signed a new signature card for the account. The signature card contained two boxes, one providing for joint ownership with rights of survivorship and one providing for joint ownership without rights of survivorship. Both boxes were left blank. The signature card also stated:
I/We agree that the changes on this Card amend the previously signed Account Card and are subject to the terms and conditions of the Membership and Account Agreement, Truth-in-Savings Disclosure, Funds Availability Policy Disclosure, if applicable, and to any amendment the Credit Union makes from time to time which are incorporated herein. I/We acknowledge receipt of a copy of the agreements and disclosures applicable to the accounts and services requested.
Ms. Walker gave Mr. and Mrs. Fleig a copy of the Credit Union's Membership and Account Agreement. The Membership and Account Agreement provided that "[u]nless otherwise stated on the Account Card ... a joint account includes rights of survivorship. This means that when one (1) owner dies, all sums in the account will pass to the surviving owner(s)." Neither of the Fleigs read the Membership and Account Agreement.
[¶4] On July 15, 2015, Mr. Fleig died, leaving behind Mrs. Fleig, two sons from a previous marriage, and a considerable amount of money in the checking account.
[¶5] Mr. Fleig's sons, Timothy L. Fleig and Michael J. Fleig, are the co-personal representatives of his estate. They filed a lawsuit on behalf of the estate against Mrs. Fleig and the Credit Union, asserting several causes of action, including a claim for declaratory judgment regarding ownership of the checking account, the only claim relevant to this appeal. Mrs. Fleig and the Credit Union filed motions for summary judgment. The district court granted summary judgment in favor of the estate on the question of ownership of the checking account, concluding that the signature card did not create rights of survivorship, that the account was held by Mr. and Mrs. Fleig as tenants in common, and that 50 percent of the account proceeds passed to the estate and 50 percent passed to Mrs. Fleig. Mrs. Fleig timely appeals.
STANDARD OF REVIEW
[¶6] The sole issue before us is whether the district court properly concluded that Mr. and Mrs. Fleig owned the checking account as tenants in common and therefore properly granted summary judgment in favor of Mr. Fleig's estate. Our review of a district court's grant of summary judgment is de novo. North Fork Land & Cattle, LLLP v. First Am. Title Ins. Co. , 2015 WY 150, ¶ 9, 362 P.3d 341, 344 (Wyo. 2015). W.R.C.P. 56 provides that summary judgment may be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When we review a summary judgment decision,
*641 we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did [the district judge]. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record.
North Fork Land & Cattle , ¶ 9, 362 P.3d at 345 (citing McGarvey v. Key Prop. Mgmt. LLC , 2009 WY 84, ¶ 10, 211 P.3d 503, 506 (Wyo. 2009), quoting Nowotny v. L & B Contract Indus. , 933 P.2d 452, 455 (Wyo. 1997) ). Further, the interpretation of "contractual language is a matter of law for the court, provided the language is clear and unambiguous." Id. at ¶ 10, 362 P.3d at 345.
DISCUSSION
[¶7] The material facts in this case are undisputed: Mr. and Mrs. Fleig signed the signature card; the boxes indicating selection of joint tenancy with or without a right of survivorship were not checked on the signature card; the signature card incorporated the Membership and Account Agreement by reference; and the Membership and Account Agreement provided that "[u]nless otherwise stated on the Account Card ... a joint account includes rights of survivorship."
[¶8] "An account signature card is a type of contract, and, therefore, must be read, considered, and construed in its entirety in keeping with the general principles of contract interpretation."[1] 10 Am. Jur. 2d Banks and Financial Institutions § 717 (2d. ed. updated February 2018) ; see also Nat'l Bank of Newcastle v. Wartell , 580 P.2d 1142, 1144 (Wyo. 1978) (recognizing bank signature card is a contract between signors and bank). "In general, the rights of the parties to joint bank accounts are to be determined by the rules of contact law, and in determining such rights the intention of the parties is controlling." In re Guardianship & Conservatorship of Bratton , 2015 WY 32, ¶ 8, 344 P.3d 255, 257 (Wyo. 2015) (citation omitted).
Our primary focus in construing or interpreting a contract is to determine the parties' intent, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. If the language of the contract is clear and unambiguous, then we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the contract. Common sense and good faith are leading precepts of contract construction, and the interpretation and construction of contracts is a matter of law for the courts.
Halling v. Yovanovich , 2017 WY 28, ¶ 19, 391 P.3d 611, 618 (Wyo. 2017) (citations omitted).
[¶9] Under general contract principles,
when a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together. However, in order for an instrument to be incorporated into and become part of a contract, the instrument must actually be incorporated. It is not enough for the contract to merely mention the instrument; the referring language in the contract must demonstrate the parties intended to incorporate all or part of the referenced instrument. Parties do not undertake obligations contained in a separate document unless their contract clearly says so. A reference in a contract to another instrument will incorporate the other instrument *642 only to the extent indicated and for the specific purpose indicated.
Pennaco Energy, Inc. v. Sorenson , 2016 WY 34, ¶ 32, 371 P.3d 120, 127-28 (Wyo. 2016) (citing Pennaco Energy, Inc. v. KD Co. LLC , 2015 WY 152, ¶ 79, 363 P.3d 18, 38-39 (Wyo. 2015) ). These principles apply to bank signature cards as well. "Documents incorporated by reference in a bank-account signature card are part of the contract." 10 Am. Jur. 2d, supra , § 717 ; see also Harby ex. rel. Brooks v. Wachovia Bank, N.A. , 172 Md.App. 415, 915 A.2d 462, 467 (Md. Ct. Spec. App. 2007) (bank depositors were bound by account rules that were incorporated by reference by signature card); Lema v. Bank of Am. N.A. , 375 Md. 625, 826 A.2d 504, 512 (2003) (depositor accepts terms of separate deposit agreement by executing signature card stating the account "shall be governed by ... the Deposit Agreement"); Jureczki v. Bank One Texas, N.A. , 75 Fed.Appx. 272, 274 (5th Cir. 2003) (same); Herrington v. Union Planters Bank, N.A. , 113 F.Supp.2d 1026, 1032 (S.D. Miss. 2000), aff'd by unpublished op. , 265 F.3d 1059 (5th Cir. 2001) (bank depositors accepted arbitration agreement by executing signature card containing agreement to be bound by changes to deposit agreement, receiving notice, and continuing to use account).
[¶10] We begin and end our examination with the plain language of the contract. The contract between Mr. and Mrs. Fleig and the Credit Union consisted of the signature card and the documents incorporated by reference, including the Membership and Account Agreement. While the signature card provides no indication whether the account provides rights of survivorship, the Membership and Account Agreement states: "Unless otherwise stated on the Account Card ... a joint account includes rights of survivorship. This means that when one (1) owner dies, all sums in the account will pass to the surviving owner(s)." Reading the contract as a whole, we conclude that the contract terms are clear and unambiguous: the account includes rights of survivorship. The failure to check the box regarding the right of survivorship did not create an obscure or double meaning making the contract ambiguous where the Membership and Account Agreement provided for rights of survivorship when not otherwise stated on the signature card. See Whitney Holding Corp. v. Terry , 2012 WY 21, ¶ 41, 270 P.3d 662, 674 (Wyo. 2012) ("A contract is ambiguous if indefiniteness of expression or double meaning obscures the parties' intent." (citation omitted) ). Because there is no ambiguity, we will not look to extrinsic evidence to interpret the parties' intent. Halling , 2017 WY 28, ¶ 20, 391 P.3d at 618 ; Amoco Prod. Co. v. Stauffer Chem. Co. of Wyo. , 612 P.2d 463, 466 (Wyo. 1980).
[¶11] The estate argues that because Mr. Fleig was "confused and suffering from hallucinations from time to time," we should disregard the language contained in the Membership and Account Agreement. There is nothing in the record to indicate that Mr. Fleig was not capable of reading or understanding the Membership and Account Agreement or that he was not fully functioning at the time he and Mrs. Fleig created the joint account. In fact, Ms. Walker testified that Mr. Fleig "seemed coherent and did not appear confused about what he was requesting," and that neither Mr. or Mrs. Fleig made "any statements which led [her] to believe [Mrs. Fleig] was exerting any sort of pressure" on Mr. Fleig to change the ownership of the account. Further, the district court granted summary judgment in favor of Mrs. Fleig on the estate's claim that Mr. Fleig was the subject of undue influence of Mrs. Fleig. The estate did not appeal that conclusion and is bound by it here.
[¶12] The estate also argues that because the Membership and Account Agreement was not read or signed by Mr. or Mrs. Fleig, we should disregard the language contained in the Membership and Account Agreement. The failure to read the Membership and Account Agreement does not render it void or non-binding. "One who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or supposed that it was different in its terms, or that he took someone's word as to what it contained." Estate of Dahlke ex rel. Jubie v. Dahlke , 2014 WY 29, ¶ 50, 319 P.3d 116, 128 (Wyo. 2014) (quoting *643 Laird v. Laird , 597 P.2d 463, 467 (Wyo. 1979) ). Further, when a signed contract incorporates by reference another document, that document becomes part of the contract even when it is not separately signed. See LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch, Inc. , 459 S.W.3d 720, 728 (Tex. Ct. App. 2015) ; Harby , 915 A.2d at 467-68.
[¶13] Rather than address the rules of contract interpretation, the estate argues that a different set of rules applies to determine the creation of rights of survivorship. The estate would have us conclude that the face of the signature card is the only document that could create a right of survivorship and, because it said nothing, we must presume no such right was created.
[¶14] A "joint tenancy with right of survivorship may be created in personal property, and specifically in a bank account." Wartell , 580 P.2d at 1144 (citations omitted). To create such an interest in Wyoming, one of the following requirements must be met:
1. Each of the four unities of interest, time, title, and possession must be present, with the added unity of person for a tenancy by the entirety; or
2. In the absence of one or more of the first four unities, it must be evident from the language of the instrument itself that the parties thereto intended to create a right of survivorship.
Id . at 1145.
[¶15] In Oatts v. Jorgenson , 821 P.2d 108, 109 (Wyo. 1991), we considered whether a treasury bill purchased in the names of "Phil Oatts or Marilyn J. Oatts or Vicki Jorgenson" created a joint tenancy between Phil and Marilyn Oatts, who were married at the time, or a tenancy in common between all three parties. We recognized that in Wyoming, "without the express provision for a joint tenancy, a tenancy in common is presumed." Id . at 114 (quoting Choman v. Epperley , 592 P.2d 714, 718 (Wyo. 1979) ), and we explained that "in the absence of a clear manifestation, on the face of the instrument, of the intention to create a right of survivorship in the account," a joint tenancy will not be presumed. Id . We concluded that the treasury bill language failed to manifest an intention to create a joint tenancy with a right of survivorship. Id . at 115.
[¶16] In Wartell , 580 P.2d at 1143, a father and son executed a signature card, which stated that all funds in the checking account "are, and shall be our joint property and owned by us as joint tenants, with right of survivorship, and not as tenants in common; and upon the death of either of us, any balance in said account shall become the absolute property of the survivor." The bank argued that because only the father had the right to sign checks on the account, the language on the signature card could not create a joint tenancy, and thus, after the father's death, the son was not entitled to the proceeds in the account. Id. at 1144. We rejected that argument, holding that the terms of the contract with the bank were "plain and unambiguous" and expressed the parties' intent to create a joint tenancy with right of survivorship. Id . at 1145-46.
[¶17] Neither of these cases stands for the proposition that we can only look to the face of the signature card to determine whether the parties intended to create rights of survivorship. Nevertheless, the district court relied upon Oatts to conclude that there was no manifestation on the face of the signature card of any intention to create a right of survivorship and, as a result, a tenancy in common was created. The district court, however, ignored the language contained in the Membership and Account Agreement, which, as we have explained, formed part of the contract between Mr. and Mrs. Fleig and the Credit Union.
[¶18] The contract language at issue here is similar to the language in Wartell . While that language did not appear on the signature card, it did form part of the contract between the Credit Union and Mr. and Mrs. Fleig. The language is plain and unambiguous and, therefore, illustrates the parties' intent to create a joint tenancy with right of survivorship.
CONCLUSION
[¶19] After our de novo review of the undisputed facts, we find that the district court should have granted summary judgment in *644 favor of Mrs. Fleig on the question of whether she had a right of survivorship in the checking account. The signature card incorporated the Membership and Account Agreement by reference; accordingly, both documents formed the contract between Mr. and Mrs. Fleig and the Credit Union, and unambiguously expressed the intent that joint accounts have rights of survivorship. Mrs. Fleig has a right of survivorship in the checking account. Reversed.

The estate argues that Mrs. Fleig waived any argument as to application of contract law because she did not raise it below. "There are few rules more firmly settled in Wyoming jurisprudence than the rule that this court does not consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court." Oatts v. Jorgenson , 821 P.2d 108, 111 (Wyo. 1991). In this case, however, the estate raised the issue of the meaning of the signature card in its claim for declaratory judgment, thus raising the question of contract interpretation in the district court and here.