**[J-46-2023] [MO: Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


| | | |
|---|---|---|
| MBC DEVELOPMENT, LP, MBC MANAGEMENT, LLC, MBC PROPERTIES, LP, JAMES L. MILLER, MILLER PROPERTIES MANAGEMENT, LLC, MARTIN CERULLO, WILLIAM KIRWAN | : : : : : : | No. 1 MAP 2023<br><br>Appeal from the Order of the Superior Court dated August 12, 2022 at No. 1295 MDA 2021 |
| | : : : | Vacating in Part/Affirming In Part the Order of the Schuylkill County Court of Common Pleas, Civil Division, |
| v. | : : : : | dated September 28, 2021 at No. S-797-2021 and Remanding. |
| JAMES W. MILLER | : : | ARGUED:  September 13, 2023 |
| | : | |
| APPEAL OF: MBC DEVELOPMENT, LP, MBC MANAGEMENT, LLC, MBC PROPERTIES, LP, JAMES L. MILLER, AND MILLER PROPERTIES MANAGEMENT, LLC | : : : : : : | |


**DISSENTING OPINION**


**JUSTICE WECHT**                                         **DECIDED:  May 31, 2024**

I agree that the plain language of the Pennsylvania Uniform Limited Partnership Act of 2016[1] requires "court review" of a special litigation committee recommendation, and that a limited partnership agreement may not "[v]ary the provisions" of the section that sets forth the procedures relating to such committees.[2]  As the Majority aptly concludes, this suggests that arbitration of the matter is unavailable.  Pennsylvania law is clear enough on the question.  If that were the end of our inquiry, I would concur fully with the Majority's disposition.

---

[1]        15 Pa.C.S. §§ 8611-95 ("PULPA").

[2]        *Id.* §§ 8694(f), 8615(c)(18); *see* Maj. Op. at 18-20.

However, as Appellee argues, federal law has something to say on the matter. Section 2 of the Federal Arbitration Act declares that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ."[3] Appellant here makes no effort whatsoever to suggest that the agreement at issue does *not* involve commerce, a suggestion that would in any event be difficult to sustain given that the matter involves the business activities of a commercial entity. Appellant also does not suggest that the partnership agreement or the arbitration clause are invalid under any contract theory, such as fraud, duress, or unconscionability. Appellee, by contrast, invokes the FAA and quotes the Supreme Court of the United States' declaration that, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."[4]

Appellee's position has facial merit. The FAA is not merely a guideline, and its application is not restricted to federal court. We also must observe the FAA's requirements. By virtue of the United States Constitution's Supremacy Clause,[5] we are without authority to declare PULPA superior to the FAA, regardless of how plain we find the language of Pennsylvania's statute.[6] In *Southland Corporation v. Keating*, the Supreme Court of the United States made clear that the FAA is "applicable in state as

---

[3]     9 U.S.C. § 2 ("FAA").

[4]     Appellee's Br. at 28 (quoting *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012)).

[5]     U.S. CONST. art. VI, cl. 2.

[6]     *See Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 499-504 (Pa. 2016) (discussing the evolution of federal law establishing that the FAA displaces contrary state law).

well as federal courts."[7]  As the Court explained there, through the FAA, "Congress declared a national policy favoring arbitration and *withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.*"[8]  With that enactment, Congress specifically "intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."[9]  "The FAA's displacement of conflicting state law is 'now well-established.'"[10]  As Appellee notes, this proposition is so well-settled that the Supreme Court deems the analysis "straightforward."[11]  The FAA's sweep is broad.  Indeed, as we have previously noted, commentators have characterized the FAA as a "preemption juggernaut" due to its far-reaching displacement of contrary state law.[12]

*Southland* is particularly noteworthy here.  In that case, the Supreme Court of the United States considered a California statute that the state court interpreted as requiring "judicial resolution" of claims brought thereunder, notwithstanding a contrary arbitration agreement.[13]  "So interpreted," the *Southland* Court concluded, the statute "directly

---

[7]     *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

[8]     *Id.* at 10 (emphasis added).

[9]     *Id.* at 16.

[10]     *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272 (1995); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 684-85 (1996); *Perry v. Thomas*, 482 U.S. 483, 489 (1987)).

[11]     *See* Appellee's Br. at 28 (quoting *Marmet Health Care*, 565 U.S. at 533); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (citing *Preston*, 552 U.S. at 353) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.").

[12]     *Taylor*, 147 A.3d at 502 (quoting Lisa Tripp & Evan R. Hanson, AT&T v. Concepcion: *The Problem of A False Majority*, 23 Kan. J. L. & Pub. Pol'y 1 (Fall 2013)).

[13]     *Southland*, 465 U.S. at 10.  Specifically, the statute at issue, similar to Section 8615(c)(18) of PULPA, forbade "[a]ny condition, stipulation or provision purporting to bind (continued…)

conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause."[14]

Before us is a Pennsylvania statute that, as the Majority correctly opines, requires judicial resolution of a claim brought thereunder, notwithstanding an otherwise valid and applicable arbitration clause. The reasoning of *Southland* would seem to apply equally here.[15] Absent any other reason to conclude that the FAA is inapplicable to this matter, I must conclude that Appellee's position is meritorious.

---

any person acquiring any franchise to *waive compliance with any provision of this law*," which the California Supreme Court interpreted as requiring "judicial resolution" of claims brought under the statute. *Id.* (quoting Cal. Corp. Code § 31512 (West 1977)) (emphasis added). PULPA analogously provides that a limited partnership agreement may not "[v]ary the requirements" of the section that requires "court review" of the matter at issue. 15 Pa.C.S. §§ 8615(c)(18), 8694(f).

[14]   *Southland*, 465 U.S. at 10.

[15]   The only appreciable distinction is that Section 8615(c)(18) of PULPA allows a partnership agreement to opt out of the use of a special litigation committee altogether. 15 Pa.C.S. § 8615(c)(18) (stating that a partnership agreement may not "[v]ary the provisions of section 8694 (relating to special litigation committee), *except that the partnership agreement may provide that the partnership may not have a special litigation committee*") (emphasis added). The parties do not address whether this option has any effect upon the FAA's otherwise vast scope.

The Concurrence takes up the issue and, volunteering an argument on Appellants' behalf, suggests that, by declining to specifically *exempt* themselves from the special litigation committee process, the parties affirmatively *chose* to render arbitration unavailable for this species of claim. Concurring Opinion at 9 n.13 (Donohue, J.). This proposition dovetails with the Concurrence's overarching view that the arbitration clause at issue must be read to incorporate the relevant provisions of PULPA, notwithstanding what the clause says on its face. As it concerns the FAA, this argument—had Appellants bothered to make it—would be more attractive than some of the alternatives, but it is unavailing nonetheless. The argument would be more persuasive if PULPA provided the opposite—a default rule that would allow enforcement of the plain language of the arbitration clause, with an "opt-in" for those who specifically desired court review of this class of dispute. Were that the case, one would be able to point to textual evidence that the parties actually agreed to exclude such claims from the scope of the arbitration clause.

As things stand, there is no indication in the text of the arbitration clause that the parties intended it to exclude any sort of claim. As the Concurrence notes, the clause provides: "*Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration . . . .*" *Id.* at 6 n.9 (quoting MBC Properties (continued…)

Appellants dispute none of this, and they make no attempt to demonstrate that Appellee's argument fails on the merits. Appellants' only mention of the FAA comes in their reply brief, in which they argue that Appellee's federal argument is waived, either for lack of preservation or want of development.[16] Issue-preservation concerns are unavailing, given that Appellee's argument for affirmance implicates the right-for-any-

---

Limited Partnership Agreement, § 11.1; MBC Development Limited Partnership Agreement, § 11.1) (emphasis added). The Concurrence accurately characterizes the clause as "broad" and "mandatory." *Id.* at 7. Yet, the Concurrence suggests nonetheless that we must disregard the plain language of the clause and then proceed to read it to say something altogether different. The Concurrence discerns an "implied term" binding the parties to Section 8694 of PULPA, and, because this (apparently invisible) term cannot be made "meaningless or superfluous," the Concurrence suggests that we must read the arbitration clause as including an unspoken carveout for challenges to special litigation committee recommendations. *Id.* This approach, the Concurrence suggests, is necessary to "effectuate the intent of the parties"—an intent not reflected in the words that the parties actually used. *Id* at 8. Because it relies upon nonexistent contractual language, this approach is too strained to carry the weight that the Concurrence asks of it.

A more straightforward analysis recognizes that the arbitration clause, in fact, says what it says. It applies to "any dispute or controversy" arising under the partnership agreements. The parties intended it so apply. *See Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) ("When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself."). Yet, under the plain language of Section 8694(f) of PULPA, this outcome would be precluded. Such a result remains facially problematic under the FAA.

The Concurrence further asserts that I maintain that the Court should "not give effect to terms that are implied by virtue of the Limited Partnership Act." Concurring Opinion at 7 n.10 (Donohue, J.). This assertion is incorrect. It is the circumstances of this case and the involvement of the FAA that compel this result. Here, the parties' agreement contains an arbitration clause that appears not to exclude any type of claim. PULPA would prohibit arbitration of the challenge to the special litigation committee's recommendations. The FAA requires that such state law be displaced. Here, whether we like it or not, PULPA must give way to the FAA.

[16] *See* Appellants' Reply Br. at 5 n.2.

reason doctrine.[17, 18] Moreover, this Court previously has endorsed the proposition that "a claim of state law preemption by federal law is of such fundamental importance that it may be considered for the first time on appeal."[19] With regard to the adequacy of Appellee's development of the issue, Appellee certainly could have written more on the matter. But his argument was nonetheless sufficient for me to notice it in his brief, and to warrant my inquiry into the merit of his position.[20] I do not discern a clear basis for deeming Appellee's argument to be waived. In any event, such a fact-specific conclusion would simply mean that this particular case does not warrant this Court's review. Even if the dispositive issue is waived, we cannot issue a decision that is in conflict with federal law. If waiver did apply here, the law would be better served by us issuing no decision at all.

---

[17] *See, e.g.*, *Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1200 (Pa. 2009) ("an appellate court may uphold an order of a lower court for any valid reason appearing from the record"); *Bearoff v. Bearoff Bros.*, 327 A.2d 72, 76 (Pa. 1974) (citing *Taylor v. Churchill Valley Country Club*, 228 A.2d 768, 769 (Pa. 1967); *Sherwood v. Elgart*, 117 A.2d 899 (Pa. 1955)) ("We have often stated that where a court makes a correct ruling, order, decision, judgment or decree, but assigns an erroneous reason for its action, an Appellate Court will affirm the action of the court below and assign the proper reason therefor.").

[18] Appellants also assert that any argument concerning the FAA was waived below due to Appellee's failure to specifically list the matter in his Pa.R.A.P. 1925(b) statement when appealing to the Superior Court. *See* Appellants' Reply Br. at 5 n.2. Although this is a plausible position, it is noteworthy that Appellee offered the same arguments about the FAA and related case law in his brief to the Superior Court, and Appellants did not complain of waiver at that point. In any event, even assuming that Appellee's argument was not fairly encompassed within his Rule 1925(b) statement and that a finding of waiver is permissible here, this strikes me more as an argument in favor of dismissing this appeal as improvidently granted, than an argument in favor of issuing a decision in conflict with federal law.

[19] *In re Novosielski*, 992 A.2d 89, 98 (Pa. 2010) (citing *Oatts v. Jorgenson*, 821 P.2d 108, 112 (Wyo. 1991)).

[20] *See* Appellee's Br. at 28-30.

The Majority attempts to avoid this problem by insisting that the FAA does not control this case. To support this position, the Majority invokes the Supreme Court of the United States' decision in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*.[21] *Volt* affirmed a state court's judgment applying a contract's choice-of-law provision. In that provision, the parties agreed to be bound by state law, which contained rules allowing a stay of arbitration pending the outcome of related litigation with third parties. The application of these state arbitration rules, the *Volt* Court held, did not violate the FAA. But *Volt* concerned exactly that—state arbitration rules. The Majority suggests that *Volt* is applicable here because the "parties' agreements incorporated the PULPA rules" concerning review of special litigation committee recommendations—rules that *preclude* arbitration.[22]

*Volt* held that "[i]nterpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—*rules which are manifestly designed to encourage resort to the arbitral process*—simply does not offend the rule of liberal construction . . . nor does it offend any other policy embodied in the FAA."[23] The *Volt* Court reiterated *Southland*'s holding that the FAA precludes state laws that "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[24] "But it does not follow," the *Volt* Court reasoned, "that the FAA prevents the enforcement of *agreements to arbitrate under different rules* than those set forth in the Act itself."[25] The Court continued: "Where, as here, the parties have agreed to abide

---

[21]    489 U.S. 468 (1989).

[22]    Maj. Op. at 22.

[23]    *Volt*, 489 U.S. at 476.

[24]    *Id.* at 478 (quoting *Southland*, 465 U.S. at 10).

[25]    *Id.* at 479 (emphasis added).

by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . . ."[26]

The issue in the instant case is not merely a matter of applying different state-law arbitration rules than those set forth in the FAA. The operative language of PULPA does not set forth an alternative arbitration process. As the Majority correctly explains, the plain language of PULPA precludes arbitration entirely in this context. Accordingly, this is not a matter of choosing between different rules "governing the conduct of arbitration."[27] This is not a *Volt* case; it is a *Southland* scenario. The Majority suggests that *Volt* controls here "because the parties' agreement incorporated Pennsylvania law, which includes PULPA, and we are enforcing the entirety of the parties' agreement."[28] But the Majority is not enforcing the entirety of the agreement; it is specifically declining to enforce the clause that mandates arbitration of all disputes under the agreement. It does so because PULPA, as the Majority correctly interprets it, requires "a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[29] The Majority's approach is directly "at odds with *Southland*" because the Majority is "applying state law to deny the enforcement of the parties' arbitration agreement."[30] Under state law, this is a perfectly acceptable result. Under the FAA, it is not.

Because we "may uphold an order of a lower court for any valid reason appearing from the record,"[31] and because Appellee presents a facially meritorious reason for such

---

[26] *Id.*

[27] *Id.* at 476.

[28] Maj. Op. at 23.

[29] *Southland*, 465 U.S. at 10; *Volt*, 489 U.S. at 478.

[30] Maj. Op. at 23.

[31] *Ario*, 965 A.2d at 1200.

affirmance, I conclude that we are bound by federal law to affirm the order of the Superior Court.

Accordingly, I respectfully dissent.