FILED
U.S. Bankruptcy Appellate
Panel of the Tenth Circuit

November 26, 2019

Blaine F. Bates
Clerk

NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE THOMAS CROW,

     Debtor.

_____

RADIANCE CAPITAL RECEIVABLES
NINETEEN LLC, STEVEN R. BAILEY,
Chapter 7 Trustee,

     Appellants,

v.

THOMAS CROW, aka Tom Crow and
CAROL-ANN CROW,

     Appellees.

BAP No. WY-18-083
BAP No. WY-18-086


Bankr. No. 17-20280
Chapter 7


OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Wyoming

_____

Before **CORNISH**, **HALL**, and **LOYD**,** Bankruptcy Judges.

_____

**HALL**, Bankruptcy Judge.

_____

     \*      This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

     \*\*      Honorable Janice D. Loyd, U.S. Bankruptcy Judge, United States Bankruptcy Court for the Western District of Oklahoma, sitting by designation.

_____

Several years prior to filing for bankruptcy protection, the chapter 7 debtor and his non-debtor spouse sold their marital home held as tenants by the entirety. Some of the net proceeds were used to purchase a new marital home, and the remainder were transferred to a joint investment account, both of which are also purportedly held as tenants by the entirety. In his bankruptcy case, debtor claimed the marital home and the investment account as exempt under Wyoming's tenancy by entireties exemption. The chapter 7 trustee and a creditor objected to debtor's claimed exemptions.

Balancing the interests of federal bankruptcy and state property law, the Bankruptcy Court overruled the objections, concluding one-half of the entireties properties belonged to the non-debtor spouse, and debtor's one-half of the entireties property was potentially subject to administration as non-exempt. The Bankruptcy Court further ruled the non-exempt portion was dependent upon joint debt, and the trustee was required to pursue turnover of the entireties property in an adversary proceeding. Both the chapter 7 trustee and the creditor appealed. Finding no error in the Bankruptcy Court's decision, we AFFIRM.

## I.  FACTUAL BACKGROUND

Thomas Crow ("Debtor"), a retired Australian professional golfer, founded Cobra Golf in the 1970s.  After making a fortune manufacturing and selling innovative golf clubs, Debtor sold the business in the mid-1990s and moved to Jackson, Wyoming where he lived with his wife, Carol-Ann Crow (individually, "Mrs. Crow," and collectively with Debtor, the "Crows").  The Crows resided at North Deland Drive in Jackson, and title to

the Deland Drive residence was vested in the Crows as husband and wife, tenants by the entirety, according to Wyoming law. [1]

At some point the Crows suffered a financial crisis, and in 2008, their daughter and son-in-law, Annabelle and Jeff Marvin (individually, "Mrs. Marvin" or "Mr. Marvin," collectively, the "Marvins"), loaned them $1,000,000. [2] The loan was made by Marvin Investment Partners to various trusts the Crows had created. The purpose of the loan was to pay expenses and enable the Crows to remain in their home.[3]

On April 29, 2015, the Crows sold the Deland Drive residence for $10,000,000, realizing $5,171,813.61 in net proceeds from the sale. The Crows then purchased a residence at North Centennial Drive, also in Jackson, Teton County, Wyoming, for $1,550,000.[4] The Crows took out a mortgage for $500,000 against the Centennial Drive residence and paid the rest of the purchase price with proceeds from the sale of the Deland Drive residence.

Advanced in age, the Crows sought the assistance of the Marvins to invest the remaining Deland Drive sale proceeds. With Mr. Marvin's help, the Crows opened a brokerage account (the "Account") with Fidelity Investments ("Fidelity"). In the *Application for a New Fidelity Account*, the Crows indicated "Account Type" as

---

[1]     *Exhibit 3 (Warranty Deed)*, *in* Appellant's App. at 888.
[2]     *Memorandum Decision on Debtor's Motion to Allow Use of Portion of Exempt Funds and Objections to Exemptions Filed by Chapter 7 Trustee and Radiance Capital Receivables Nineteen, L.L.C.* at 3-4, *in* Appellant's App. at 108-09.
[3]     *Id.* at 4, *in* Appellant's App. at 109.
[4]     The Centennial Drive marital residence is held by the Crows as tenants by the entirety.

"TENANTS BY THE ENTIRETY."[5] However, on the application, tenants by the entirety is crossed out and beside it, "Thomas L. Crow And Carol Ann Crow, Husband & Wife, as tenants by the entirety," is handwritten.[6] Mrs. Marvin had the authority to act on behalf of the Crows with respect to the Account as she was appointed attorney-in-fact under a Fidelity Durable Power of Attorney. As of May 31, 2015, the Account had a balance of approximately $3.5 million.

During 2015 and 2016, Mrs. Marvin transferred almost $900,000 from the Account directly to the Marvins or to third parties for their benefit.[7] The Marvins considered these disbursements to be repayment of the $1,000,000 loan made to the Crows in 2008 by Marvin Investment Partners.[8]

In late 2016, creditor Radiance Capital Receivables Nineteen, LLC ("Radiance") began attempting to collect on a judgment against Debtor. The judgment stemmed from Debtor's personal guarantee of a $1.5 million promissory note made by The Thomas L. Crow Family Limited Partnership.[9] Upon default, the holder of the note, 2010-1 RADC/CADC VENTURE, LLC, obtained a judgment against Debtor in Routt County, Colorado District Court on July 5, 2013.[10] The judgment was subsequently assigned to

---

[5]     *Debtor's Replacement Exhibit 12*, at 1, *in* Appellant's App. at 924.
[6]     *Id.*, *in* Appellant's App. at 924.
[7]     *Memorandum Decision on Debtor's Motion to Allow Use of Portion of Exempt Funds and Objections to Exemptions Filed by Chapter 7 Trustee and Radiance Capital Receivables Nineteen, L.L.C.* at 4, *in* Appellant's App. at 109. Specifically, the transfers from the Account in 2015 totaled $532,000, and the transfers for 2016 totaled $357,820. The transfers were either direct payments to the Marvins or payment of debts on the Marvins' behalf, such as credit card bills or school tuition for their children.
[8]     *Id.; Tr.* at 149-50, *in* Appellant's App. at 427-28.
[9]     Exhibit O (Proof of Claim) at 5, *in* Appellant's App. at 582.
[10]     *Id., in* Appellant's App. at 582.

4

Radiance who registered it in Teton County, Wyoming. Radiance then served a notice of garnishment on Fidelity attempting to reach assets in the Account, which prompted Debtor to file for bankruptcy protection on April 18, 2017. Steven R. Bailey ("Trustee") was appointed as chapter 7 trustee in Debtor's case.

Debtor listed the Centennial Drive residence, valued at $1,282,706, and the Account, valued at $2,516,514.97, on Schedule B. On Schedule C, Debtor claimed both the Centennial Drive residence and the Account as 100% exempt pursuant to 11 U.S.C. § 522(b)(3)(B)[11] and Wyoming's tenancy by the entirety exemption.[12] Trustee and Radiance objected to Debtor's claimed exemption in the Account, arguing the exemption did not apply because the Account was not created as a tenancy by the entirety.[13] Further, both objecting parties argued that, even if the Account was created as a tenancy by the entirety, Debtor and Mrs. Crow had subsequently severed the Account's tenancy by the entirety status and forfeited its associated protections.

The Bankruptcy Court conducted an evidentiary hearing on the objections to exemption on October 31, 2017. After hearing closing arguments by telephone and taking the matter under advisement, the Bankruptcy Court issued a memorandum decision overruling the objections to Debtor's claimed exemption on April 4, 2018 (the

---

[11]     All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[12]     Schedule C, *in* Appellant's App. at 72.

[13]     *Trustee's Objection to Certain Exemptions Claimed by the Debtor, in* Appellant's App. at 173; *Objection to Debtor's Claim of Exemptions, in* Appellant's App. at 204. Trustee and Radiance also lodged objections to Debtor's claimed exemption in the Centennial Drive residence.

"Exemption Order").[14] In the Exemption Order, the Bankruptcy Court found the Account application evidenced Debtor's intent to create a tenancy by the entirety and, therefore, concluded Wyoming's tenancy by the entirety exemption applied to the Account. The Bankruptcy Court also found the transfers to the Marvins and other Account activity did not sever the Account's entireties status. As a result, the Bankruptcy Court "allow[ed] the Debtor's tenants by the entirety exemption as to the [Account] and the Centennial [Drive] real property."[15] However, the Bankruptcy Court acknowledged that "[e]ntireties property is not exempt from process under Wyoming law from claims against both spouses. Therefore, to 'the extent that joint creditors existed at the filing of the bankruptcy petition, the entireties share is not exempt.'"[16] Because the parties sought to address the amount of joint debt in a separate proceeding, the Bankruptcy Court reserved such determination and ordered that "the amount of the exemption will be resolved upon a determination of the amount of joint debt."[17]

Debtor filed a *Motion for Further Findings and/or to Clarify Memorandum Decision* (the "Motion for Clarification") pursuant to Federal Rules of Bankruptcy

---

[14]   *Memorandum Decision on Debtor's Motion to Allow Use of Portion of Exempt Funds and Objections to Exemptions Filed by Chapter 7 Trustee and Radiance Capital Receivables Nineteen, L.L.C.*, *in* Appellant's App. at 106.

[15]   *Id*. at 10, *in* Appellant's App. at 115.  With respect to the Centennial Drive residence, the Bankruptcy Court stated that Trustee and Radiance "initially disputed the exemption, but at the hearing conceded it as allowed, subject to Debtor and Mrs. Crow's joint debt." *Id.* at 2, *in* Appellant's App. at 107.

[16]   *Id*. at 9-10, *in* Appellant's App. at 114-15 (citing *In re Wenande*, 107 B.R. 770, 774 (Bankr. D. Wyo. 1989).

[17]   *Id*. at 10, *in* Appellant's App. at 115.

Procedure 9023 and 7052.[18] Mrs. Crow joined in the Motion for Clarification.[19] The Motion for Clarification asserted there was no joint debt left to be determined because there were no timely filed proof of claims asserting joint liabilities.[20] Trustee objected to Debtor's Motion for Clarification, arguing there was a total of $1,807,344.80 in joint debt based on the mortgage secured by the Centennial Drive residence and the promissory note to Marvin Investment Partners,[21] thereby rendering such portion of the Account non-exempt.[22] Trustee also filed his *Motion for Entry of an Order Requiring the Transfer of $1,807,344.80 in Funds from the Fidelity Account Based on the Court's April 4, 2018 Memorandum Decision* (the "Turnover Motion"), requesting turnover of that amount for payment of joint debts.[23]

The Bankruptcy Court issued two orders in response to these motions. First, the Bankruptcy Court amended its Exemption Order, clarifying Mrs. Crow was "entitled to one-half of the exempt entireties property before distribution to the estate. The portion of the other half that is subject to administration as non-exempt will be based on the amount

---

[18] Appellee Debtor's App. at 22. All future references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[19] *Joinder in Motion for Further Findings and/or to Clarify Memorandum Decision*, *in* Appellee Debtor's App. at 26.

[20] *The Trustee's Amended Opposition to (1) the Debtor's Motion for Further Findings and/or to Clarify Memorandum Decision, and (2) Carol-Ann Crow's Joinder in the Debtor's Motion* at 8, *in* Appellant's App. at 1083.

[21] The Trustee filed a proof of claim on behalf of Marvin Investment Partners for $1,320,624. *Proof of Claim, in* Appellant's App. at. 1095.

[22] *The Trustee's Amended Opposition to (1) the Debtor's Motion for Further Findings and/or to Clarify Memorandum Decision, and (2) Carol-Ann Crow's Joinder in the Debtor's Motion* at 16, *in* Appellant's App. at 1091.

[23] Appellant's App. at 1119. Presumably, Trustee seeks to administer the whole amount that he contends is nonexempt entireties property from the Account.

of the joint debt," which is to be determined (the "Amended Exemption Order").[24]

Second, the Bankruptcy Court denied the Turnover Motion and required Trustee to seek turnover of the entireties property through an adversary proceeding (the "Adversary Order").[25] The Bankruptcy Court concluded, because the assets involved were held in tenancy by the entirety by Debtor and Mrs. Crow, a non-debtor, Rule 7001(1) required Trustee to bring an adversary proceeding "to recover money" pursuant to § 542(a).[26] Both Radiance and Trustee now appeal these determinations by the Bankruptcy Court.

## II.    JURISDICTION AND STANDARD OF REVIEW

Radiance and Trustee each filed appeals of the Exemption Order, the Amended Exemption Order, and the Adversary Order. The two appeals were companioned for purposes of briefing and argument, and the Court allowed Mrs. Crow to intervene as an appellee in both appeals.[27]

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit"[28] and "with leave of the court, from other interlocutory orders and decrees."[29]

---

[24]    *Amended Memorandum Decision on Debtor's Motion to Allow Use of Portion of Exempt Funds and Objections to Exemptions Filed by Chapter 7 Trustee and Radiance Capital Receivables Nineteen, L.L.C.* at 15, *in* Appellant's App. at 130.

[25]    *Order Denying Trustee['s] Motion for Turnover of the Fidelity Account, Without Prejudice*, *in* Appellant's App. at 131.

[26]    Fed. R. Bankr. P. 7001(1).

[27]    After the appeals were filed, Trustee, Debtor, and Mrs. Crow reached an agreement allowing Mrs. Crow to use all but $1,807,344.80 of the funds in the Account, which the Bankruptcy Court approved. *See Order Granting Stipulation to Resolve, without Prejudice, Carol-Ann Crow's Motion for Release of Funds*, *in* Appellant's App. at 1286.

[28]    *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C.

8

After entering an order to show cause regarding finality of the appealed orders and considering the responses thereto, a motions panel of this Court concluded the Adversary Order was a final order,[30] but that the Exemption Order and Amended Exemption Order were interlocutory. However, the motions panel granted leave to appeal pursuant to 28 U.S.C. § 158(a)(3), concluding the appeals addressed a controlling question of law as to which there are grounds for differing opinions and immediate appeal would materially advance the ultimate termination of the litigation.[31] Neither party in this case elected for this appeal to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over these appeals.[32]

---

§ 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

[29] 28 U.S.C. § 158(a)(3).

[30] *Order Allowing Appeals to Proceed*, *in* Appellant's App. at 1289. The panel consisted of Chief Judge Nugent and Judges Michael and Jacobvitz. ("This Court previously held that an order denying a motion as procedurally improper and requiring a party to pursue claims in an adversary proceeding, as opposed to a contested matter, "is a final order for purposes of appeal." *Staker v. Jubber*, UT-12-072 (10th Cir. BAP Oct. 25, 2012)).

[31] *Id.*

[32] In her brief (BAP ECF 50), Mrs. Crow argues the notices of appeal were untimely with respect to the interlocutory Exemption and Amended Exemption Orders because they did not merge into the final Adversary Order. However, a motions panel of this Court entered an *Order Allowing Appeals to Proceed*. In light of the following facts : (i) the Exemption Order was previously timely appealed but was not final (see BAP cases WY-18-060 and WY-18-061); (ii) Mrs. Crow failed to argue that the Exemption and Amended Exemption Orders did not merge into the Adversary Order in her response (BAP ECF 17) to the Court's Order to Show Cause Why Appeal Should not be Dismissed as Interlocutory; (iii) the Exemption and Amended Exemption Orders concern the extent to which exemption of the Account is allowed which is to be determined in the adversary; and (iv) the merits of the Bankruptcy Court's orders are being affirmed and such rulings are favorable to Mrs. Crow, we decline to further address Mrs. Crow's argument that our review should be limited to the Adversary Order.

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')."[33] Our *de novo* review of legal issues requires an independent determination, giving no special weight to the bankruptcy court's decision.[34] We review a bankruptcy court's factual findings under the clearly erroneous standard. A factual finding is "clearly erroneous" when "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made."[35] Mixed questions of law and fact arise "'when the facts are admitted or established and the law is undisputed,' and the issue is only whether the facts meet the statutory standard."[36] "Where the mixed question involves primarily a factual inquiry, the clearly erroneous standard is appropriate. If, however, the mixed question primarily involves the consideration of legal principles, then a *de novo* review by the appellate court is appropriate."[37]

Here, the issues on appeal presented primarily involve legal issues. The validity of Debtor's claimed state law exemption with respect to the Account property is reviewed *de*

---

[33] *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1370 (10th Cir. 1996).

[34] *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991).

[35] *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *LeMaire ex rel. Le Maire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987)).

[36] *In re Tri-State Equip., Inc.* 792 F.2d 967, 970 (10th Cir. 1986) (citing *Supre v. Ricketts*, 792 F.2d 958, 961 (10th Cir. 1986)). ).

[37] *Supre v. Ricketts*, 792 F.2d at 961.

*novo*,[38] without deferring to the Bankruptcy Court's interpretation of state law.[39] Likewise, we also review the Bankruptcy Court's conclusion that an adversary proceeding was required, i.e., interpretation and application of the Bankruptcy Rules, *de novo*.[40]

## III.    ANALYSIS

Radiance and Trustee each raise several issues on appeal, some of them directly related to issues actually decided by the Bankruptcy Court and some of them related to questions that are yet to be resolved in the adversary proceeding on turnover.[41] Additionally, arguments made by Debtor and Mrs. Crow in response to Radiance's and Trustee's asserted errors on appeal go beyond the scope of the Bankruptcy Court's decisions.[42] As our jurisdiction is confined to judgments, orders, or decrees entered by the Bankruptcy Court, we will not address those issues, or any sub-issues that are part and

---

[38]    *In re Jennings*, No. WY-17-002, 2017 WL 5591463, at *2 (10th Cir. BAP Nov. 21, 2017) (unpublished), *aff'd* 739 F. App'x 505 (10th Cir. 2018) (citing *In re Borgman*, 698 F.3d 1255, 1259 (10th Cir. 2012) (Validity of claimed state law exemption is reviewed *de novo*, without deferring to the bankruptcy court's interpretation of state law.)).

[39]    *In re Borgman*, 698 F.3d at 1259 (quoting *In re Wagers*, 514 F.3d 1021, 1024 (10th Cir. 2007)).

[40]    *Id.*.

[41]    For example, Radiance argues Trustee is entitled to at least one-half of the Account (*see* Appellant's Opening Brief, BAP ECF 40, at 21), and Trustee argues the undisputed amount of the joint debt is $1,807,344.80 (*see* Co-Appellant's Brief, BAP ECF 35, at 44).

[42]    Debtor argues there is no debt to be administered by the Trustee from the tenancy by the entirety property. Further, both Debtor and Mrs. Crow argue that Trustee may not administer the Centennial Drive residence because the debt thereon is fully secured (*see* Appellee Thomas Crow's Brief, BAP ECF 52, at 14, 16-17 and Appellee's Brief, BAP ECF 50, at 40).

parcel thereof, that the Bankruptcy Court has specifically reserved for determination in the adversary proceeding.[43]

Additionally, because the parties do not appear to view the Bankruptcy Court's decisions in precisely the same way, we find it essential to set forth our interpretation of the Bankruptcy Court's Exemption Order, Amended Exemption Order, and Adversary Order before analyzing the parties' arguments on appeal. We summarize the Bankruptcy Court's conclusions as follows: (i) the Crows hold the Centennial Drive residence as tenants by the entirety, and it is, therefore, potentially exempt under § 522(b)(3)(B);[44] (ii) on the petition date, the Crows held the Account as tenants by the entirety, and it is, therefore, potentially exempt under § 522(b)(3)(B); (iii) Mrs. Crow, as a non-filing spouse, is entitled to have her one-half interest in the entireties property separated from the bankruptcy estate prior to administration; (iv) Debtor's one-half interest in the entireties property is subject to administration by Trustee to the extent of the amount of joint debt owed by the Crows; (v) the amount of the joint debt and, therefore, the exempt amount of Debtor's one-half interest in the entireties property was reserved for determination;[45] and (vi) Trustee must pursue turnover of Debtor's one-half interest in the

---

[43] Contrary to Debtor's assertion, it is not presumed that this Court decided to resolve the issue of joint debt on the merits simply because his Motion to Strike Portion of Co-Appellant's (Trustee's) Brief (BAP ECF 39) was referred to this merits panel and not ruled upon by a motions panel (BAP ECF 46). Further, because he subsequently withdrew it (BAP ECF 48), Debtor's motion to strike is DENIED as moot.

[44] On appeal, neither Radiance nor Trustee challenge the exemption of the Centennial Drive residence, in and of itself, as entireties property.

[45] As mentioned above, Trustee argues the joint debt has been definitively established as $1,807,344.80, and Debtor argues there is no joint debt. But the amount of joint debt and, therefore, the amount of the entireties exemption, was clearly reserved for determination in a subsequent proceeding and is not before us on appeal.

entireties property by way of an adversary proceeding because Mrs. Crow still retains an interest in such property. We decline to address the issue of whether the portion of entireties property subject to administration is available to all creditors of the estate or only joint creditors.[46]

**A.     The Bankruptcy Court Did Not Err in Concluding the Account was Tenancy by the Entirety Property Eligible for Exemption Pursuant to § 522(b)(3)(B).**

"Property interests are created and defined by state law[,]" and unless some federal interest requires otherwise, interests of parties in bankruptcy proceedings are analyzed under state law.[47] Additionally, the scope and application of state exemptions are defined by the state courts, and we are bound by their interpretations.[48] Moreover, our interpretation of exemption statutes must further the spirit of such laws, and we "must be 'guided by the general principle that exemption statutes are to be liberally construed so as to effect their beneficent purposes.'"[49]

**1. The Account was Established and Held by Debtor and Mrs. Crow as Tenants by the Entirety.**

"Tenancy by the entirety" is a form of concurrent property ownership unique to spouses. The term results from the fact that spouses "are seized of the *entirety*; neither can

---

[46]     In absence of a determination of joint debt, and therefore, whether there is in fact entireties property subject to administration by Trustee, a decision regarding distribution is premature. We note, however, that § 522(k) provides, with limited exceptions, "[p]roperty that the debtor exempts under this section is not liable for payment of any administrative expense." *See Law v. Siegel*, 571 U.S. 415 (2014); *In re Holley*, 661 F. App'x 391 (6th Cir. 2016).

[47]     *Butner v. United States*, 440 U.S. 48, 55 (1979).

[48]     *In re Borgman*, 698 F.3d 1255, 1259 (10th Cir. 2012).

[49]     *In re Gregory*, 245 B.R. 171, 173 (10th Cir. BAP 2000) (quoting *Royal v. Pancratz (In re Pancratz)*, 175 B.R. 85, 93 (D. Wyo. 1994)).

sever the union of interest without the concurrence of the other; each and both own the whole estate during their lives, and upon the death of either the survivor continues to own the whole estate; each is seized of an indivisible entirety; so neither has a separate interest therein that can be aliened."[50] The original purpose of this form of co-ownership was "to protect a wife from the husband who might irresponsibly lose the family home or other assets."[51]

At early common law, tenancy by the entirety was the most prevalent form of concurrent ownership of property by married couples.[52] Today, however, tenancy by the entirety and the protection it affords spouses are recognized in only one-half of the states and the District of Columbia, and the law varies significantly from state to state. For example, a subset of those states recognizing tenancy by the entirety do so only with respect to real property.[53] Further, the means of establishing a tenancy by the entirety runs the gamut from a presumption when property is held jointly by spouses to the requirement that the parties must specifically express intention in writing to take or hold property as tenants by the entirety. Additionally, of the states recognizing tenancy by the entirety, not all provide that entireties property is exempt from process for the debt of only one spouse.[54] Thus, we necessarily begin by discussing Wyoming tenancy by the entirety

---

[50]     *Peters v. Dona*, 54 P.2d 817, 825 (Wyo. 1936). *See also Zubrod v. Duncan (In re Duncan)*, 329 F.3d 1195, 1201 (10th Cir. 2003).
[51]     *In re Bellingroehr,* 403 B.R. 818, 820 (Bankr. W.D. Mo. 2009).
[52]     1 John Tingley, et al., *Marital Property Law* § 1:2 (2d ed. June 2019).)
[53]     *In re Jaffe*, 932 F.3d 602, 606 (7th Cir. 2019); 1 Edward F. Koren, Estate, Tax & Pers. Fin. Planning § 10:6| (September 2019).  *See also* W.W. Allen, *Estates by Entirety in Personal Property,* 64 A.L.R.2d 8 (2019).,.
[54]     *See* 1 John Tingley, et al., *Marital Property Law* § 2:6 (2d ed. June 2019).) J.H. Cooper, *Interest of Spouse in Estate by Entireties as Subject to Satisfaction of His or*

14

law.

Wyoming law recognizes co-ownership of property by a husband and wife as tenants by the entirety with respect to both real and personal property.[55] The plain language of Wyoming Statute § 34-1-140 evidences the Wyoming legislature's intent to allow citizens to hold personal property as tenants by the entirety by providing that a tenancy by the entirety "as to any interest in real *or personal property* may be established . . . by designating in the instrument . . . the names of such . . . tenants by the entirety."[56] The Wyoming Supreme Court also interprets the statute as Wyoming's recognition of "tenancies by the entirety in real or personal property."[57] If spouses hold real or personal property as tenants by the entirety, under Wyoming law, such property is generally not subject to legal process to satisfy a debt of only one spouse.[58]

The method of establishing a tenancy by the entirety in Wyoming has evolved over time. Historically, the Wyoming Supreme Court "accept[ed] the presumption that a conveyance to husband and wife, without saying anything more, intend[ed] the creation of a tenancy by the entireties."[59] More recently, however, the Wyoming Supreme Court

---

*Her Individual Debt,* 75 A.L.R. 2d 1172 (2019).

[55]    *In re Anselmi*, 52 B.R. 479, 485 (Bankr. Wyo. 1985) (citing *Fehling v. Cantonwine*, 379 F. Supp. 1250 (D. Wyo. 1974)).

[56]    Wyo. Stat. § 34-1-140 (1979) (emphasis added).

[57]    *Lurie v. Blackwell*, 51 P.3d 846, 851, n.3 (Wyo. 2002) (first citing *Oatts v. Jorgenson*, 821 P.2d 108, 114 (Wyo. 1991), then citing *Choman v. Epperly*, 592 P.2d 714, 715-19 (Wyo. 1979), then citing *Nat'l Bank of Newcastle v. Wartell*, 580 P.2d 1142, 1144 (Wyo. 1978); and finally citing Wyo. Stat. § 34-1-140 (2001)).

[58]    *United States v. Lain*, No. 17-CV-113, 2019 WL 2051960, at *8 (D. Wyo. Feb. 5, 2019 (unpublished) (citing *Baker v. Speaks*, 334 P.2d 1215,-1221(Wyo. 2014) and *Talbot v. United States*, 850 F. Supp. 969, 975 (D. Wyo. 1994)).

[59]    *Witzel v. Witzel*, 386 P.2d 103, 105 (Wyo. 1963).

and the Wyoming legislature have moved away from the presumption of creation of tenancy by the entirety or joint tenancy between husband and wife in favor of a tenancy in common when the conveyance is silent as to the classification of the concurrent estate.[60] Specifically, the Wyoming Supreme Court has held, absent an express intention to create a joint tenancy, "a tenancy in common was presumed."[61] The Wyoming legislature embraced this view by enacting Wyoming Statute § 34-1-140 (emphasis added), which provides,

> A joint tenancy or a ***tenancy by the entirety as to any interest in* real or *personal property may be established by the owner thereof, by designating in the instrument of conveyance or transfer*,** the names of such joint tenants or *tenants by the entirety*, including his own, without the necessity of any transfer or conveyance to or through a third person.[62]

The Wyoming Supreme Court has since held that § 34-1-140 "reflects a legislative intention that 'joint tenancies' and 'tenancies by the entireties' are created by the use of one or the other of those phrases."[63] "Therefore, the current state of Wyoming law presumes a conveyance to two individuals that is silent as to the classification of the concurrent estate they hold produces a tenancy in common, and this result is so even if those two individuals are husband and wife."[64]

---

[60]    *Lain*, at 2019 WL 2051960, at \*8 (citing *Choman* , 592 P.2d at 718.; Wyo. Stat. § 34-1-140 (1977)).
[61]    *Choman*, 592 P.2d at 718 (referencing the holding in *Nussbacher v. Manderfeld*, 186 P.2d 548 (Wyo. 1947)).
[62]    Wyo. Stat. § 34-1-140 (1977) (emphasis added).
[63]    *In re Thomas*, 199 P.3d 1090, 1095 (Wyo. 2009).
[64]    *Lain*, 2019 WL 2051960, at \*8.

In *Wambeke v. Hopkin*,[65] the Wyoming Supreme Court ruled as follows regarding

the creation of tenancy by the entirety:

> In order to create in Wyoming a joint tenancy or tenancy by the
> entirety, in personal property, there must exist one of the following
> minimum requirements:
>
>> 1. Each of the four unities of interest, time, title, and
>> possession must be present, with the added unity of
>> person for a tenancy by the entirety; *or*
>>
>> 2. In the absence of one or more of the first four
>> unities, it must be evident from the language of the
>> instrument itself that the parties thereto intended to
>> create a right of survivorship.[66]

Herein, the Bankruptcy Court, citing *Wambeke*, acknowledged that unity of possession

was missing but concluded the Account was held by the Crows as tenants by the

entirety.[67]  The Bankruptcy Court relied on the Account application that specifically states

the Account should be opened in the names of "Thomas and Carol Ann Crow, Husband &

Wife, as tenants by the entirety."[68] Inclusion of the phrase "tenants by the entirety" avoids

the presumption of a tenancy in common by expressly indicating the Crows' intent.[69]

On appeal, as it did before the Bankruptcy Court, Radiance argues the Account

application is not the type of "instrument of conveyance or transfer" sufficient to

evidence Debtor's intent to create a tenancy by the entirety. Radiance relies, in part, on *In*

---

[65]    372 P.2d 470 (Wyo. 1962).

[66]    *Id.* at 475-76 (emphasis added).

[67]    Although *Wambeke* is a 1962case, the second minimum requirement is
consistent with Wyoming's subsequent move away from presumption of a tenancy by the
entirety. It requires express intent by the parties, and it is this requirement that the
Bankruptcy Court relied on.

[68]    *Debtor's Replacement Exhibit 12*, at 1, *in* Appellant's App. at 924.

[69]    *In re Thomas*, 100 P.3d 1090, 1095 (Wyo. 2009).

*re Anselmi*[70] to support its argument. In *Anselmi,* a debtor claimed a tenancy by the entirety exemption with respect to four types of personal property: a contract for deed, stock shares, a foreign trust, and household goods and artwork. Analyzing the different types of assets, the bankruptcy court distinguished the household goods and artwork because they were "personalty without instruments of title."[71] The bankruptcy court held that the household goods and artwork did not meet the first of *Wambeke's* minimum requirements because there was no unity of interest and further did not meet *Wambeke's* second minimum requirement "because by the nature of the property there is no 'instrument' of title upon which an intent to create a right of survivorship may be shown."[72] Accordingly, the bankruptcy court held the household goods and artwork were not exempt as property held as tenants by the entirety.[73]

Analogously, Radiance argues the Account application is not an instrument of conveyance or transfer and urges this Court to reject the Bankruptcy Court's findings and conclusions that the Account application created a tenancy by the entirety. While we agree that the language of § 34-1-140 provides that tenancy by the entirety "may be established" in "the instrument of conveyance or transfer," Radiance's interpretation and focus on "conveyance" and "transfer" as modifiers of "instrument" is misplaced and would unduly narrow the types of personal property that may be held by entireties.[74]

---

[70]    52 B.R. 479 (Bankr. D. Wyo. 1985).
[71]    *Id.* at 491.
[72]    *Id.* at 492.
[73]    *Id.* at 492.
[74]    The point is well illustrated by the facts of this case. Establishment of the Account did not strictly involve a conveyance or transfer. The Crows owned the Deland Drive marital residence as tenants by the entirety and proceeds from the sale of that

First, the statute provides that joint tenancy or tenancy by the entirety "***may*** be

established" in an instrument of conveyance or transfer, not that it "***must*** be established"

in such an instrument.  Second, there is nothing to suggest that § 34-1-140 was enacted by

the Wyoming legislature in order to limit the types of property that may be held in

tenancy by the entirety or joint tenancy to only those involving an instrument of

conveyance or transfer.[75]  Instead, the very language of § 34-1-140 ("without the

necessity of any transfer or conveyance to or through a third person") gives the

impression that its primary purpose is to eliminate the necessity of a strawman transaction

when one spouse is conveying property to himself and his spouse as tenants by the

entirety.[76]

Further, Radiance's interpretation is inconsistent with the *Anselmi* bankruptcy

court's explanation and description of the term "instrument." Although neither Wyoming

statute nor Wyoming case law specifically defines the term instrument for these purposes,

the *Anselmi* bankruptcy court opined that:

---

marital residence are in the Account purportedly held as tenants by the entirety. The form
of the property has changed, but it is owned by the same people in the same manner.

[75]    For example, Wyoming recognizes that bank accounts may be held in joint
tenancy with right of survivorship, *Fleig v. Estate of Fleig*, 413 P.3d 638, 643-44 (Wyo.
2018), and such is established via the account agreement and/or account signature card,
which are not technically instruments of transfer or conveyance.

[76]    *Anselmi*, 52 B.R. at 486, n.6 ("Section 34-1-140 was apparently intended to
remedy the situation which existed at common law wherein one spouse could not convey
to himself and his spouse to create an estate by the entirety. This disability necessitated a
conveyance to a third party "strawman," who would then reconvey the property to the
husband and wife jointly. In most states which continue to recognize tenancy by the
entirety, statutes similar to § 34-1-140, allow a tenancy by the entirety to be created by a
direct conveyance from one spouse to both of them, thereby eliminating the "strawman"
transaction.").

a careful reading of *Wambeke* indicates that, in this context, the word [instrument] refers to those writings which give formal expression to a legal act or agreement for the purpose of creating, securing, modifying, or terminating a right. As used by the *Wambeke* court, "instrument" might include bills, bonds, conveyance, leases, mortgages, contract, promissory notes, deeds, and other similar writing whereby "chattel is embodied in a document."[77]

Here, the Bankruptcy Court concluded the Account application – a formal written document that embodies the chattel and expresses an agreement to create rights with respect to that property – clearly and unmistakably evidenced "the Debtor's intent to hold the [A]ccount as tenants by the entirety."[78] We agree. The application that creates the Account and establishes the rights of the parties thereto is unambiguous. Debtor expressly stated his intent by using the language – "as tenants by the entirety" – thus complying with the requirements the Wyoming law.[79]

Even if there were ambiguity, the Crows' intent was further supported by Mr. Marvin's testimony that, in helping the Crows set up the Account, he recommended Fidelity because it was one of the few brokerage firms allowing accounts to be held as tenants by the entirety.[80] The Bankruptcy Court's conclusion is also bolstered by the fact the Account was established with proceeds from the sale of the Deland Drive residence,

---

[77] *Id.* at 492.

[78] *Amended Memorandum Decision on Debtor's Motion to Allow Use of Portion of Exempt Funds and Objections to Exemptions Filed by Chapter 7 Trustee and Radiance Capital Receivables Nineteen, L.L.C.* at 7, *in* Appellant's App. at 122.

[79] *See Debtor's Replacement Exhibit 13*, *in* Appellant's App. at 948.

[80] *Tr.* at 191, *in* Appellant's App. at 438.

which was held by the Crows as tenants by the entirety, and, therefore, the proceeds retain their character.[81]

Radiance argues, notwithstanding the Crows' designation of the Account as entireties property, the terms of the Account contradict the nature of a tenancy by the entirety as they allow for either party to act as if he or she is the sole owner of the Account, without any approval from the joint owner. But, under the second minimum requirement set forth in *Wambeke* and the Wyoming statute, the crucial consideration in determining whether property is held as tenants by the entirety is the parties' express intention when ownership of the property is established. The additional terms contained in the Account application are merely Fidelity's boiler plate language and cannot override the parties' unambiguous intent.[82] Wyoming law provides a tenancy by the entirety may be established when the owner of the property designates the property as such in the instrument or document establishing or creating ownership of the property. Therefore, it is unnecessary to look beyond Debtor's designation, "Thomas L. Crow And Carol Ann Crow, Husband & Wife, as tenants by the entirety" to ascertain his intent.[83] Accordingly,

---

[81] *Cates v. Daniels*, 628 P.2d 862, 866 (Wyo. 1981) ("[T]he proceeds, or equity from the sale of marital property, remains entireties property." (citing *Ward Terry & Co. v. Hensen*, 297 P.2d 213, 219-20 (Wyo. 1956))). *See also In re Benzaquen*, 555 B.R. 63 (Bankr. S.D. Fla. 2016) (regardless of whether bank account was entireties account, funds deposited in account traceable to sale of homestead property owned as tenants by the entirety did not lose their entireties character simply by virtue of being deposited in account).

[82] *See Fleig v. Estate of Fleig*, 413 P.3d 638, 641 (Wyo. 2018) (citing *In re Guardianship of Bratton*, 344 P.3d 255, 257 (Wyo. 2015) (intention of the parties is controlling)). The Court would also point out that the cases cited by Radiance to support its argument in this regard were not decided under Wyoming law. *See* Appellant's Opening Brief at 17-18.

[83] *Debtor's Replacement Exhibit 12*, at 1, *in* Appellant's App. at 924.

we conclude the Bankruptcy Court did not err in determining the Account was held by

Debtor and Mrs. Crow as tenants by the entirety.

### 2. The Tenancy by the Entirety Status of the Account was Not Severed by Subsequent Transactions.

On appeal, Radiance argues, even if the application created an Account held as

tenants by the entirety, the Bankruptcy Court erred in concluding that subsequent acts by

Debtor, Mrs. Crow, and the Marvins did not sever the Account's tenancy by the entirety

status. We disagree.

When an asset is held as tenants by the entirety, it generally continues during the

existence of the marital relationship, and neither spouse can sever the entirety without the

consent of the other.[84] In Wyoming, a tenancy by the entirety "can be changed or severed

only by the voluntary joint acts of both parties or by operation of law, e.g., by divorce."[85]

Aside from death or divorce, severing a tenancy by the entirety requires "mutual

agreement," which "need not be explicit, but may be implied or inferred from the conduct

of the parties, provided the conduct is inconsistent with the continuation of an entirety

estate."[86] In *Witzel v. Witzel*,[87] the Supreme Court of Wyoming highlighted the

requirement that a tenancy by the entirety can only be severed by joint rather than

unilateral action.  It explained the difference between joint tenancy and tenancy by the

entirety is "the right which exists in a joint tenant, and not in a tenant by the entirety, to

---

[84]     *Wambeke v. Hopkin*, 372 P.2d 470, 474 (Wyo. 1962).
[85]     *Id.* (citing *Hutcherson v. United States*, 92 F. Supp. 168, 170 (D. Mo. 1950), *aff'd*, 188 F.2d 326 (8th Cir. 1951)).
[86]     41 C.J.S. *Husband & Wife* § 46 (citing *In re Nagel*, 298 B.R. 582 (Bankr. E.D. Va. 2003)).
[87]     386 P.2d 103 (Wyo. 1963).

sever the tenancy by his sole act as an inter vivos transaction, and thus destroy the right of survivorship."[88]

Radiance argues the Bankruptcy Court improperly ignored transfers from the Account to the Marvins on account of a promissory note executed by the Crows in favor of Marvin Investment Partners. While Marvin Investment Partners is technically the party to the promissory note, the Bankruptcy Court found the Marvins loaned the Crows the funds through Marvin Investment Partners. Nothing in the record suggests this finding was clearly erroneous. Furthermore, Radiance fails to explain how transfers to the Marvins result in severance of the tenancy by the entirety. Standing alone, the transfers to the Marvins, in and of themselves, do not reflect Debtor and Mrs. Crow's mutual or joint agreement to terminate the entireties estate but rather an intent to repay a joint debt.

Radiance and Trustee also argue Debtor and Mrs. Crow mutually agreed to sever the tenancy by the entirety by executing a stipulation allowing Mrs. Crow to withdraw all but $1,807,344.80 of the funds from the Account.[89] Though agreed to by counsel for Debtor and Mrs. Crow, the joint stipulation was executed on December 21, 2018, more than one year after the petition date. It is well established that a debtor's right to an exemption is determined on the petition date.[90] Further, the language of the

---

[88]    *Id.* at 109 (quoting *Dimock v. Corwin*, 99 F.2d 799, 801 (2d Cir. 1938)).

[89]    The parties reference the *Joint Stipulation to Resolve, without Prejudice, Carol-Ann Crow's Motion for Release of Funds*, *in* Appellant's App. at 1286.

[90]    *White v. Stump*, 266 U.S. 310, 313 (1924) ("[T]he point of time which is to separate the old situation form the new in the bankrupt's affairs is the date when the petition is filed."); *Mansell v. Carroll*, 379 F.2d 682, 684 (10th Cir. 1967) (same); *In re Hall*, 441 B.R. 680, 685 (10th Cir. BAP 2009) (citing *In re Robinson*, 295 B.R. 147, 153 (10th Cir. BAP 2003)).

§ 522(b)(3)(B) exemption itself refers to "interests of the debtor in property *as of the commencement of the case*."[91] Therefore, any agreement to modify the estate held in the Account after the date of the petition has no bearing on the status of the entireties exemption that was applicable on the petition date.

## B. The Bankruptcy Court did not Err in Setting Aside One-Half of the Entireties Property as Mrs. Crow's Interest before Distribution by the Estate.

Having concluded that the Bankruptcy Court did not err in holding that the Account is tenancy by the entirety property, we now address Radiance and Trustee's asserted errors regarding the treatment of the entireties property in the bankruptcy case.

## 1. Tenancy by the Entirety Property in Bankruptcy Generally

The reported case law involving tenancy by the entirety property in bankruptcy, like state law regarding tenancy by the entirety, varies widely and is difficult to reconcile. The treatment of entireties property in bankruptcy necessarily depends heavily on the facts of each case because numerous variables are in play. These might include, but are not limited to, whether the bankruptcy case is that of an individual debtor or joint debtors, whether the bankruptcy case is filed under chapter 7 or chapter 13, the type of property that is held in tenancy by the entirety and whether it is partitionable (e.g., a residence versus a bank account), whether the joints debts relate to the tenancy by the entirety property, and whether the joint debts are secured versus unsecured. As the Fourth Circuit

---

[91] *See In re Hamacher*, 535 B.R. 180, 187 (Bankr. E.D. Mich. 2015) (debtor was entitled to claim exemption with respect to realty held in tenancy by the entirety notwithstanding that debtor's spouse died during administration of the case vesting property in debtor alone).

Court of Appeals has opined, the question of how to deal with property held by debtors as tenants by the entirety is a "bedeviling issue in bankruptcy law."[92] We wholeheartedly concur with this sentiment.

Although we analyze the property interests of parties in bankruptcy proceedings under state law,[93] once that state law determination is made, courts "must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate."[94] At least three sections of the Bankruptcy Code specifically come into play in the tenancy by the entirety context. First, under § 541(a)(1), "all legal and equitable interests that a debtor holds in property at the commencement of a bankruptcy case" are included in the bankruptcy estate. The Code's broad definition of the estate includes a debtor's interest in property held in tenancy by the entirety.[95] Thus, it would appear that all tenancy by the entirety property in which a debtor has an interest comes into the bankruptcy estate pursuant to § 541 because the debtor has an interest in the whole property.[96]

---

[92] *In re Bunker,* 312 F.3d 145, 148 (4th Cir. 2002). Additionally, one bankruptcy law professor has stated that "the law of administering [entireties property is] extraordinarily complex – as complex as any bankruptcy issue I have ever encountered." David Gray Carlson, *The Federal Law of Property: The Case of Inheritance Disclaimers and Tenancy by the Entireties,*, 75 Wash. & Lee L. Rev. 3 (Winter 2018).

[93] *Butner v. United States*, 440 U.S. 48, 55 (1979).

[94] *Cohen v. Chernushin (In re Chernushin)*, 911 F.3d 1265, 1269 (10th Cir. 2018) (quoting *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008)).

[95] *In re Jaffe*, 932 F.3d 602, 607 (7th Cir. 2019); *In re Brannon*, 476 F.3d 170, 174 (3d Cir. 2007).

[96] *Talbot v. UnitedStates*, 850 F. Supp. 969, 972-73 (D. Wyo. 1994) (citing *Peters v. Dona*, 54 P.2d 817, 825 (Wyo. 1936)).

However, § 522(b)(3)(B)[97] exempts "any interest in property in which the debtor had an interest as a tenant by the entirety [ ], to the extent that interest as a tenant by the entirety is exempt from process under applicable nonbankruptcy law."[98] "In Wyoming, property held as tenants by the entirety cannot be executed upon to satisfy a judgment [or debt] against only the husband or the wife."[99] Thus, the amount of a couple's joint debts potentially interacts with the tenancy by the entirety exemption under § 522(b)(3)(B).[100]

But Congress, well aware of the complex problems arising when fewer than all co-owners of property have filed for bankruptcy protection, also enacted § 363(h), (i), and (j). These provisions allow a trustee to partition[101] co-owned property in which the debtor has an undivided interest as a tenant in common, joint tenant, or tenant by the entirety. If partition is not feasible, the trustee may, subject to certain hurdles and limitations, sell the property and divide the proceeds of the sale between the estate and the co-owners. Specifically, § 363(j) provides:

> After a sale of property to which subsection . . . (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any

---

[97]     Section 522(b)(3)(B) was previously denoted as § 522(b)(2)(B).

[98]     *In re Jennings*, No. WY-17-002, 2017 WL 5591463, at *1 (10th Cir. BAP Nov. 21, 2017) (unpublished), *aff'd* 739 F. App'x 505 (10th Cir. 2018) (unpublished).

[99]     *Baker v. Speaks*, 295 P.3d 847, 858-59 (Wyo. 2013) (multiple citations omitted).

[100]     *Jennings*, 2017 WL 5591463, at *5 (quoting *In re Wenande*, 107 B.R. 770, 774 (Bankr. D. Wyo. 1989)).; *In re Welty*, 217 B.R. 907, 911 (Bankr. D. Wyo. 1998) (holding property owned as tenancy by the entirety is only exempt if equity exceeds the total amount of joint debt).

[101]     **Partition means to divide the property into the cotenants' respective fractional shares.** *See generally In re Dahlgren*, 418 B.R. 852, 859 (Bankr. D. N.J. 2009).

compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.[102]

Although each spouse holding property as a tenant by the entirety is considered to own the whole estate – an indivisible entirety – during his or her life, and neither has a separate interest therein that can be alienated,[103] courts have recognized that this peculiar form of co-tenancy is based upon the legal fiction that spouses are one person.[104] Not surprisingly then, § 363(h), (i), and (j) illustrates that for certain purposes, Congress has determined that tenancy by the entirety should be treated like other forms of co-tenancy when only one spouse has filed for bankruptcy protection. Ultimately, when bankruptcy cases, either individual or joint, involve property held by spouses as tenants by the entirety, courts are forced to "balance . . . the notion that the bankruptcy estate is composed of all legal and equitable interests of the debtorand the fact that tenants by the entirety own indivisible interests in entireties property."[105]

### 2. Wyoming Bankruptcy Cases Involving Entireties Property

We now turn our attention to the four reported Wyoming cases involving entireties property in bankruptcy – *In re Anselmi*, *In re Wenande*, *In re Welty*, and *In re Jennings* – on which all of the parties rely to one degree or another. Although we conclude that none

---

[102] 11 U.S.C. § 363(j).

[103] *Peters v. Dona*, 54 P.2d 817, 825 (Wyo. 1936). *See also Zubrod v. Duncan (In re Duncan)*, 329 F.3d 1195, 1201 (10th Cir. 2003).

[104] *In re Brannon*, 476 F.3d 170, 173 (3d Cir. 2007). Even the United States Supreme Court has referred to state law governing tenancies by the entirety as "peculiar legal fiction." *United States v. Rodgers,* 461 U.S. 677, 703 n.31 (1983).

[105] *In re Van Der Heide*, 164 F.3d 1183, 1185 (8th Cir. 1999).

of them, alone or in combination, dictate the result in this appeal, we must begin by briefly reviewing these four cases.

In *Anselmi*,[106] a married individual filed for chapter 7 bankruptcy protection and claimed a wide variety of property interests as exempt, alleging they were all held with his wife as tenants by the entirety. Creditors objected to the debtor's claimed exemption in all but two pieces of real property. The bankruptcy court ultimately allowed the exemption for the real property in absence of objection and concluded, over creditors' objection, that the debtor's interests in certain contracts for deed were exempt as entireties property. The bankruptcy court determined that all other property the debtor claimed as exempt was not held in tenancy by the entirety and, therefore, not exempt. *Anselmi* neither mentions joint debts held by the debtor and his spouse, nor discusses the "amount of the exemption" to which the debtor was entitled. As a result, although the *Anselmi* bankruptcy court's decision was helpful in determining whether the Account was entireties property as discussed above, it provides no further guidance here.

In *Wenande*,[107] a husband and wife filed a joint voluntary petition for relief under chapter 11, but the case was subsequently converted to a case under chapter 7. On their schedules, the joint debtors claimed an exemption under applicable Wyoming law for the following as entireties property:

> All of the debtor's property that qualifies [ ], including but not limited to:
> stock, mineral interests, real estate, accounts, intangibles and personal
> property, which includes, but would not necessarily be limited to the

---

[106]    52 B.R. 479 (Bankr. D. Wyo. 1985).
[107]    *In re Wenande*, 107 B.R. 770 (Bankr. D. Wyo. 1989).

following: 1) all of the debtor's shares in the Wenande Land & Livestock Co. Inc., 2) all of the debtor's shares in the Trail Creek Grazing Assoc.[108]

The trustee objected, and the bankruptcy court determined that the descriptions of most of the property were insufficient to entitle the debtors to their claimed exemptions.[109] With respect to the shares in Wenande Land and Livestock Co. Inc. and Trail Creek Grazing Assoc., the bankruptcy court concluded the trustee had not met his burden of showing the property was not properly claimed as exempt.

Before analyzing the extent to which those properties were exempt, the bankruptcy court noted, although there were many recent cases dealing with the status of entireties property when only one spouse had filed bankruptcy, "there is very little case law on the status of entireties property in a bankruptcy case filed by both spouses."[110] The bankruptcy court ruled, because entireties property is not exempt from process under Wyoming law from claims against both spouses, "to 'the extent that joint creditors existed at the filing of the bankruptcy petition, the entireties share is not exempt.'"[111] It further concluded "the amount . . . these joint debtors may exempt . . is their equity in the entireties property, less the total sum of all joint claims against both debtors,"[112] but the value of the debtors' entireties property and the amount of their joint debts are not revealed. Because the analysis is unfortunately not carried out to its logical end, and particularly because it involved joint debtors, *Wenande* is also of limited use in resolving

---

[108] *Id.* at 771.
[109] *Id.* at 773.
[110] *Id.*
[111] *Id.* at 774 (quoting Lawrence Kalevitch, Some Thoughts on Entireties in Bankruptcy, 60 Am. Bankr. L.J. 141, 150 (Spring, 1986)).
[112] *Id.*

the issues before us on appeal. That the whole of the entireties property would be included in the estate and subject to administration to the extent of the spouses' joint debts was the only tenable result because both spouses had filed for bankruptcy protection. Otherwise, allowing complete exemption of the entireties property and granting the joint debtors a discharge would be to return to pre-Bankruptcy Code law and "result in a legal fraud, i.e. the effectual withdrawing of the property from the reach of those entitled to subject it to their claims, for the beneficial ownership and possession of those who created the claims against it."[113]

*Welty*[114] involved an individual debtor who filed a chapter 13 case. The debtor claimed various real and personal property as exempt and scheduled a number of joint obligations with his spouse. The bankruptcy court concluded only two parcels of real estate were held in tenancy by the entirety and noted the joint debts included secured debt on the real property and other unsecured debts. Relying on *Wenande*, the bankruptcy court concluded "[t]o the extent joint claims exist against [debtor's] estate and his nonfiling spouse, the value of the tenancy by the entireties property is not exempt. The debtor must include this value in the liquidation analysis accompanying his plan, and in the payments made under the plan."[115] We fail to see how the bankruptcy court's ruling in *Welty* governs the result in our individual debtor chapter 7 case. First, the *Welty* court merely assumed, without explanation or analysis, that "Wyoming law is settled and consistent with other jurisdictions on this question in the context of a chapter 7 case,

---

[113]     *Phillips v. Krakower*, 46 F.2d 764, 765 (4th Cir. 1931).
[114]     *In re Welty*, 217 B.R. 907 (Bankr. D. Wyo. 1998).
[115]     *Id.* at 911.

regardless of whether the spouses are both debtors or one is a nondebtor."[116] Second, including property in a chapter 13 liquidation analysis and determination of plan payments is simply not the equivalent of actual liquidation of a non-debtor's property interests.

Most recently, in *Jennings*,[117] this Court affirmed the Wyoming bankruptcy court's decision in another individual debtor chapter 7 case involving tenancy by the entirety property and joint debts. In *Jennings*, the only entireties property claimed as exempt was the married couple's home, which was subject to a joint mortgage and an IRS lien for which both spouses were ultimately determined to have liability. Relying on *Wenande*, the bankruptcy court held the debtor could claim the entireties exemption "to the extent that the equity exceeds the total amount of the debts owed jointly by the debtor and his non-filing spouse."[118] After the debtor appealed the bankruptcy court's decision, the trustee filed an adversary proceeding seeking to sell the entireties property under § 363(h).

On appeal to the BAP, the debtor did not contest the principles of *Wenande* and, thus, it was unnecessary for this Court revisit them. Instead, the debtor primarily argued the trustee could not administer the potentially non-exempt portion of the entireties property because he may not stand in the shoes of the IRS to challenge the exemption. The debtor also argued the tenancy by the entirety property was not part of the

---

[116]     *Welty*, 217 B.R. at 911 (citing *In re Wenande*, 107 B.R. 770 (Bankr. D. Wyo. 1989) and *In re Cochrane*, 178 B.R. 1011, 1022 (Bankr. D. Mo. 1995).
[117]     *In re Jennings*, No. WY-17-002, 2017 WL 5591463, at *1 (10th Cir. BAP Nov. 21, 2017) (unpublished), *aff'd* 739 F. App'x 505 (10th Cir. 2018) (unpublished).
[118]     *Id.* at *1.

bankruptcy estate due to his non-filing spouse's interest therein. This Court correctly rejected both of the debtor's arguments and affirmed the decision of the bankruptcy court.

Additionally, this Court declined to consider an argument made by the debtor based on events occurring after the bankruptcy court's order was entered, namely the adversary proceeding filed by the trustee under § 363(h). However, in doing so, it noted "[t]he bankruptcy court may determine whether the [entireties property] can be feasibly partitioned in kind or whether it must be sold and the proceeds divided between the estate and the non-debtor spouse,"[119] but declined to discuss the issue further as the proceeding was not complete and the merits were not properly before the Court on appeal. Additionally, this Court did not address the debtor's claim that the appealed order violated the distribution priorities established in § 726(a) of the Code, deeming it premature because no distribution had occurred.[120]

The Tenth Circuit Court of Appeals summarily affirmed this Court's *Jennings* decision,[121] also declining to consider the debtor's challenge to the trustee's anticipated distributions of assets as irrelevant to the exemption issue,[122] as well as the debtor's argument that only a judgment creditor has standing to object to his claimed exemption in the tenancy by the entireties real property.[123] This Court's *Jennings* decision contains enough factual details to determine that equity existed in the entireties property over and above the spouses' joint mortgage and joint liability to the IRS. However, there is no

---

[119]     *Id.* at *6.
[120]     *Id.*
[121]     *In re Jennings*, 739 F. App'x 505 (10th Cir. 2018) (unpublished).
[122]     *Id.* at 509.
[123]     *Id.* at 510.

32

calculation of that equity in *Jennings*. More importantly, there is no determination as to whether the entire amount of equity, or only that portion of equity allocable to the debtor's interest, is subject to administration by the trustee.

The above discussion illustrates that prior Wyoming bankruptcy decisions involving entireties property are not completely instructive on the issues presented to the Bankruptcy Court in this case. Even if it could be argued that these decisions provide the answers to the questions before us, we note that such cases do not represent controlling authority that the Bankruptcy Court was bound to follow.[124]

3.      **The Bankruptcy Court's Decision Properly Balances the Interests of Federal Bankruptcy Law and State Property Law.**

After concluding the Centennial Drive residence and the Account were held by Debtor and Mrs. Crow as tenants by the entirety and qualified for exemption, the Bankruptcy Court ruled that Mrs. Crow is "entitled to one-half of the exempt entireties

---

[124]      "Under principles of *stare decisis*, a decision of a federal district court judge or bankruptcy court is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *In re Jones*, 538 B.R. 844, 848 (Bankr. W.D. Okla. 2015) (first citing *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.,*, 240 F.3d 956 (11th Cir. 2001), and then citing *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991)); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's Fed. Practice § 134.02[1][d], p. 134-26 (3d ed. 2011)); *see In re Jones*, 298 B.R. 451, 460-61 (Bankr. D. Kan. 2003) ("[T]he bankruptcy courts are not bound by [*stare decisis*] to follow any district judge's decisions either."). Further, "it is unclear that a Tenth Circuit BAP opinion is binding precedent on" bankruptcy courts. *In re Wenzel*, 415 B.R. 510, 516 (Bankr. D. Kan. 2009). Additionally, *Jennings* is an unpublished opinion that "may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion." *In re Jennings*, 2017 WL 5591463, at *1, n.*.

property before distribution to the estate."[125] Relying on *Welty* and *Wenande*, Trustee

argues the Bankruptcy Court improperly allowed Mrs. Crow to receive one-half of the

entireties property before distributions were made to joint creditors. We disagree.

The Bankruptcy Court's decision to immunize one-half of the entireties property from

administration by Trustee is based primarily on case law from Missouri bankruptcy courts

and the Eighth Circuit Court of Appeals ("Eighth Circuit"), as well as analogies to §

363(j) of the Code. As is evident from *Talbot v. U.S.*,[126] it is not unusual for Wyoming

courts to rely on Missouri law when addressing issues of tenancy by the entirety[127]

because Wyoming's "definition of property held by tenants by the entireties is identical to

the definition of that property interest in Missouri."[128] Further, Missouri, like Wyoming,

clearly exempts entireties property from attachment and execution where only one of the

entirety interest holders is indebted.[129] The Missouri case law on which the Bankruptcy

Court relied is much more instructive than the Wyoming bankruptcy case law discussed

above and, therefore, its analysis is more persuasive.

The Bankruptcy Court's decision emphasizes *In re Van Der Heide* and *In re Eads*,

but the results in those cases stem from the earlier case of *In re Garner*[130] and, thus, it

provides the starting point for our analysis. In *Garner*, an individual chapter 7 debtor held

---

[125] *Amended Memorandum Decision on Debtor's Motion to Allow Use of Portion of Exempt Funds and Objections to Exemptions Filed by Chapter 7 Trustee and Radiance Capital Receivables Nineteen, L.L.C.* at 15, *in* Appellant's App. at 130.

[126] 850 F. Supp. 969 (D. Wyo. 1984).

[127] *Id.* at 974 (noting that the Wyoming Supreme Court relied upon Missouri law in *Peters v. Dona*, 54 P.2d 821, 824-25 (Wyo. 1936)).

[128] *Id.* at 975.

[129] *In re Eads*, 271 B.R. 371, 374-75 (Bankr. W.D. Mo. 2002).

[130] 952 F.2d 232 (8th Cir. 1991).

stock in tenancy by the entirety with his spouse. The debtor sought to exempt the stock

under § 522(b)[3](B), but the trustee objected and pursued turnover. After the Missouri

bankruptcy court's decision that the stock should be included in the debtor's estate was

reversed and remanded by the district court, the debtor appealed to the Eight Circuit.

The Eighth Circuit framed the question on appeal as "whether personal property

held in tenancy by the entirety by a debtor and his spouse should be included as property

of the bankruptcy estate when only one spouse is in bankruptcy."[131] It answered the

question in the affirmative, stressing the all-encompassing language of § 541(a).[132] In

examining the potential exemption of the entireties property under § 522(b)[3](b), the

Eighth Circuit concluded "that were the question before the Supreme Court of Missouri in

a nonbankruptcy context, that court would not prevent creditors from accessing tenancy

by the entirety property where the entirety owners were jointly indebted to the

creditors."[133] Regarding the disposition of the stock, which had been reduced to cash

before the appeal could be heard, the Eighth Circuit ruled that one-half of the cash

received for the stock must be returned to the non-filing spouse in order to comply with §

363(h) of the Bankruptcy Code that allows partition of co-owned property.[134] In doing so,

it emphasized that "returning one-half of the proceeds from the sale of the stock shares to

---

[131]     *Id.* at 233.
[132]     *Id.* at 234.
[133]     *Id.* at 235.
[134]     *Id.* at 236. Although the stock shares had been sold, the Eighth Circuit did not apply § 363(j), which requires proceeds of a sale to bear costs and expenses prior to distribution. In the Eighth Circuit's view, it would not have been impracticable to partition the stock, in which case, the non-filing spouse's share would not be reduced by selling costs and expenses. *Id.* at n.5.

[the non-filing spouse] does not insulate her from creditors pursuing whatever actions they possess against her."[135]

About eight years later, the Eighth Circuit was again faced with the baffling and bewildering entireties issue, this time in the individual chapter 13 case of *In re van der Heide*.[136] In this case, the debtor and his spouse owned a home as tenants by the entirety in which there was equity that, upon sale, would have produced net proceeds after deduction for transactional costs. For purposes of the liquidation analysis, the debtor contended only one-half of the hypothetical net proceeds was required to be included in the bankruptcy estate, but the trustee argued all of the net proceeds were included, less any applicable exemption. The Missouri bankruptcy court agreed with the trustee and denied confirmation of the debtor's chapter 13 plan as not being in the best interests of creditors as required by § 1325(a)(4). On appeal, the Eighth Circuit reversed, "conclud[ing] that the rule announced in *Garner* dictates that only one-half of the hypothetical sale proceeds, less exemptions, are subject to the bankruptcy estate"[137] and that such "was an equitable rule that preserves the balance of the breadth of federal bankruptcy and state property law."[138]

The bankruptcy courts for both the Eastern and Western Districts of Missouri have since applied the *Garner* and *Van Der Heide* principles to chapter 7 cases filed by only one spouse. In *In re Eads*,[139] the bankruptcy court was tasked with the "proper division of

---

[135]    *Id.*
[136]    164 F. 3d 1183 (8th Cir. 1999).
[137]    *Id.* at 1184.
[138]    *Id.* at 1185.
[139]    271 B.R. 371 (Bankr. W.D. Mo. 2002).

the proceeds from the sale of a residential property owned by the Debtor and his non-debtor spouse as tenants by the entirety."[140] It held, pursuant to § 363(j) and controlling Eighth Circuit law, "the net proceeds from the sale of the real estate, after payment of the transactional costs and the mortgage debts, must be divided equally between the spouses and the Debtor's one-half share of those proceeds must be applied by the Trustee to payment of the parties' joint debts only."[141] Similarly, in the more recent case of *In re Story*,[142] the bankruptcy court held that "one-half of the [entireties property] will be property of the estate [ ] which the Trustee may use to satisfy any debt that is jointly held by Debtor and [his non-filing spouse]."[143]

Herein, the Bankruptcy Court was presented with the same issues as described above—an individual chapter 7 debtor who held certain property with his non-filing spouse in tenancy by the entirety and is potentially liable on joint obligations. We take no issue with the Bankruptcy Court applying Missouri bankruptcy case law because Missouri state law regarding tenancy by the entirety is analogous to that of Wyoming.[144]

Further, the Bankruptcy Court's stated objective was to ensure creditors were treated similarly in bankruptcy as under state law in absence of bankruptcy, a permissible

---

[140]    *Id.* at 372.

[141]    *Id.*

[142]    536 B.R. 279 (Bankr. E.D. Mo. 2015).

[143]    *Id.* at 285.

[144]    In its Amended Exemption Order, the Bankruptcy Court notes that a previous judge of the Wyoming bankruptcy court held in an earlier unreported decision, *In re Bean*, Adv. Pro. 12-2018, (Bankr. D. Wyo. Aug. 2, 2013 and Jan. 10, 2014), that the non-debtor spouse was entitled to one-half of the interest in tenancy by the entirety property before the trustee distributed the proceeds. Bankruptcy courts in other jurisdictions have reached similar results. *See, e.g., Finneran v. Assocs. Fin. Servs. (In re Blair)*, 151 B.R. 849, 851-53 (Bankr. S.D. Ohio 1992), *aff'd* 33 F.3d 54 (6th Cir. 1994);

goal for a court of equity.[145] The Bankruptcy Court's "conclusion accords with Congress'

intent to bring all of a bankrupt individual's property interests into the bankruptcy estate

and then equitably protect the nonbankrupt individual's interest in the property."[146]

In sum, the Bankruptcy Court properly navigated the tightrope of tension that exists when

a married individual files bankruptcy holding entireties property, raising that peculiar

legal fiction of state law that the spouses' interest are held by a single marital entity. We

find no error in the Bankruptcy Court's decision.

> ### C.     The Bankruptcy Court Did Not Err in Concluding an Adversary Proceeding is Required to Order Turnover of Entireties Property to the Estate.

The Bankruptcy Court concluded Mrs. Crow continued to have an undivided

interest in Debtor's share of the entireties property pursuant to Wyoming tenancy by

entireties law.[147] Therefore, the Bankruptcy Court denied Trustee's motion for turnover,

---

[145]     *See generally BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 557 n.10 (1994) ("creditors' 'substantive' state law rights 'survive' in bankruptcy, while their 'procedural' or 'remedial' rights under state debtor-creditor law give way [to bankruptcy law]"); *Cent. States Corp. v. Luther*, 215 F.2d 28, 46 (10th Cir. 1954) ("A bankruptcy court is a court of equity and is guided by equitable principles and doctrines except when they are inconsistent with the Bankruptcy Act."); *In re Waring*, 555 B.R. 754, 758, n.7 (Bankr. D. Colo. 2016) (explaining § 105 allows bankruptcy courts to "fill in statutory gaps . . . where the proposed action is not expressly circumscribed and instead is in harmony with other provisions of the Bankruptcy Code as well as its overriding purpose.") (internal citations omitted).

[146]     *In re Garner*, 952 F.2d at 235 (explaining § 541 revisions protected a cotenant's property rights when property held in tenancy by entirety (citing H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963)); *In re Jaffe*, 932 F.3d 602 (7th Cir. 2019) (quoting *Chisnosorn*, 243 B.R. at 700 ("[T]he apparent intent of [§ 522(b)(3)(b)] is to provide, in bankruptcy, a level of protection from claims of creditors identical to the protection that owners of entireties property would have in collection proceedings outside of bankruptcy, under applicable state law.").

[147]     *Order Denying Trustee['s] Motion for Turnover of the Fidelity Account, Without Prejudice* at 1-2, *in* Appellant's App. at 131-32.

determining that Rule 7001(1) required the parties to bring an adversary proceeding in order to compel transfer of assets to the estate in which a non-debtor has an interest. On appeal, Radiance and Trustee argue the Bankruptcy Court's ruling in this regard is error. We do not agree. Rule 7001(1) provides that "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002" is an adversary proceeding.[148] Trustee argues § 542(a) entitles him to turnover of at least $1,258,257.48 without need for bringing an adversary proceeding. Trustee's argument is based on his assertion that the undisputed amount of joint debt owed by the Crows on the petition date of $1,807,344.80 exceeds Debtor's one-half undivided interest $1,258,257.48 in the Account. We take issue with Trustee's argument for several reasons.

First, based on representations of the parties at the hearing, the Bankruptcy Court expressly reserved determination of the amount of joint debt for a future proceeding. Second, the special nature of tenancy by the entirety property, i.e., that each spouse holds an undivided ownership in the whole of the property,[149] necessarily impacts bankruptcy procedures when only one spouse is a debtor. As the Bankruptcy Court held, Mrs. Crow is entitled to one-half the value of the entireties property and additionally retains an interest in Debtor's one-half of the entireties properties. Accordingly, Trustee's motion for turnover squarely falls into the category of "a proceeding to recover money or

---

[148]     Fed. R. Bankr. P. 7001(1).
[149]     *Zubrod v. Duncan (In re Duncan)*, 329 F.3d 1195, 1201 (10th Cir. 2003) ("Entirety in this connection means indivisibility." (quoting *Ward Terry & Co. v. Hensen*, 297 P.2d 213, 215 (Wyo. 1956))); *Case v. Sink & Rise, Inc.*, 297 P.3d 762, 766 (Wyo. 2013).

property, other than a proceeding to compel the debtor to deliver property to the trustee" requiring an adversary proceeding.[150]

Further, turnover is not intended to remedy or determine disputed rights of parties to property of the bankruptcy estate; rather, it is a remedy to be used only to obtain property that is acknowledged to be property of the debtor's estate.[151] The extent of litigation over the estate's and Mrs. Crow's interests in the Account belies any claim that turnover is an appropriate mechanism for determining the estate's interest (and Mrs. Crow's interest) therein.

Finally, although Mrs. Crow has intervened in this appeal, she was not a party or participant in all of the proceedings before the Bankruptcy Court and, thus, was unable to fully protect her rights in the entireties property. An adversary proceeding will permit the Bankruptcy Court to obtain jurisdiction over Mrs. Crow and allow her due process before potentially requiring turnover of the property in which she has an interest.

As a result, we conclude that the Bankruptcy Court did not err in denying Trustee's motion for turnover and requiring an adversary proceeding to be filed.

---

[150] *In re MF Glob. Inc.,* 531 B.R. 424, 431 (Bankr. S.D. N.Y. 2015) (citing *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990)). *See also* 10 Collier on Bankruptcy ¶ 7001.02 (16th ed. 2010) ("Proceedings within Rule 7001(1) include actions by trustees . . . to compel turnover of property of the estate pursuant to section 542(a)[.]"). This is especially the case given that Trustee seeks to use the assets in which Mrs. Crow has an interest to pay claims representing individual debts of Debtor.
[151] *(In re Rubesh*, 347 B.R. 115, 2006 WL 1867678 (10th Cir. BAP July 6, 2006) (unpublished).

**IV.**         **CONCLUSION**

Having reviewed the briefs, record on appeal, and applicable law, and applied the appropriate standard of review, we find no error in the Bankruptcy Court's analysis or ruling. Thus, the Bankruptcy Court's conclusions that (i) Debtor and Mrs. Crow established and maintained the Account as tenants by the entirety, (ii) the entireties property may be claimed as exempt pursuant to § 522(b)(3)(B) dependent upon the joint debt of the Crows, (iii) one-half of the entireties property should be set aside for Mrs. Crow prior to administration, and (iv) Trustee is required to seek turnover of the entireties property through an adversary proceeding, are hereby AFFIRMED.